STATE of Wisconsin, Plaintiff-Respondent,

v.

Thomas W. KOEPPEN, Defendant-Appellant.†

Court of Appeals

*No. 99–0418–CR. Submitted on briefs April 13, 2000.—Decided May 17, 2000.*

## 2000 WI App 121

(Also reported in 614 N.W.2d 530.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Richard L. Zaffiro* of Wauwatosa.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Diane M. Welsh*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Nettesheim, Anderson and Snyder, JJ.

¶ 1. ANDERSON, J. Thomas W. Koeppen appeals from a judgment of conviction for failure to comply with an officer while being taken into custody as a habitual offender contrary to WIS. STAT. §§ 946.415 and 939.62(1)(b) (1997–98).[1] Koeppen also appeals from an order denying his postconviction motion requesting a sentence modification because of a new factor. He raises four arguments on appeal. First, he argues that he was denied his right to a unanimous jury verdict because the court instructed the jury by using disjunctive language to describe the crime and did not require it to agree on which act he committed. Second, he contends that the trial court erred by: (1) admitting prior acts into evidence and (2) concluding that he failed to demonstrate the existence of a new factor and, therefore, was not entitled to a modification of his sentence. Third, he challenges that the habitual offender portion of his conviction was not proven by the State. Finally, Koeppen argues that the evidence was insufficient to support the verdict.

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

¶ 2. Despite Koeppen's contention that the disjunctive phrases in WIS. STAT. § 946.415 refer to factually distinct courses of conduct, we agree with the trial court that the disjunctive phrases indicate alternative means of committing each component of the crime. As such, the jury was only required to agree that Koeppen committed each component of the crime to satisfy his constitutional guarantee to a unanimous jury verdict. Because we also conclude that the trial court did not commit any errors, the habitual offender portion of Koeppen's sentence was properly proven and sufficient evidence was present to support the jury's guilty verdict, we affirm the judgment and the order.

## BACKGROUND

¶ 3. On January 3, 1997, at 12:30 a.m., City of New Berlin Police Officer Gregory Godec and a fellow officer were dispatched to the Koeppen residence after dispatch received a 911 call that a domestic dispute was in progress. Dispatch also revealed to Godec that Koeppen had been drinking, an act that would violate Koeppen's probation conditions. Because of a previous police encounter at Koeppen's house, Godec was familiar with the house's layout and wanted to prevent Koeppen from going into the basement, so Godec went to the house's back door, which was closest to the basement stairs.[2] Meanwhile, Koeppen was still talking to dispatch on the phone. Dispatch told him to meet the

---

[2] Godec had previously responded to an incident at Koeppen's residence in 1994, which led to Koeppen's arrest. At trial, the State moved the court to allow evidence about this incident to be introduced to explain why the officers took the situation as seriously as they did. The court granted the motion and allowed the testimony. Koeppen contests the admission of this evidence on appeal, and we address his argument later in this opinion.

officers at the back door. He refused and stated that he was in the back room. Koeppen's wife, Jeri, went to the back door to meet the officers.

¶ 4. Jeri informed the officers that Koeppen was in the back room with a knife. After exiting the house, she told the officers that earlier in the evening Koeppen had been drinking from a twenty pack of Blatz Light and that he was on some medication that made him act strangely.

¶ 5. The officers entered the house and proceeded down the hallway to further investigate the emergency. Godec noticed several beer cans beside the recliner and strewn around the house. The officers took positions behind room walls where they could maintain visual observation of the back room and hallway. The officers could still hear Koeppen speaking with dispatch on the phone and noticed that his speech was slurred. They began to initiate conversation with him. They asked him if he had a knife inside the room with him. Koeppen responded, "Yes." The officers maintained a dialogue with him for almost two hours. The officers encouraged Koeppen to slide the knife under the door and exit the room with his hands in the air. Instead of doing so, Koeppen wanted to know why the officers were in his house and with which statute number he was being charged. He also stated, "Don't come towards me" on several occasions.

¶ 6. Godec repeated the request that Koeppen throw the knife out into the hallway. Koeppen replied,

---

In brief, the jury was informed that during the 1994 incident, Koeppen refused to come out of the basement. When the officers entered the basement to investigate, they negotiated a maze of boxes and junk in the dark because Koeppen had unscrewed the light bulbs. The officers found Koeppen lying on the couch with a loaded, homemade firearm.

"Which one?" Godec queried him about how many knives he had and how big they were. Koeppen replied, "I have a knife. I don't have to tell you how big it is. I have a knife." Godec testified that Koeppen made similar statements approximately ten times during the two-hour dialogue. Godec asked if there was anything the officers could do or say to get him to come out of the room. When Koeppen responded negatively, Godec, determining that they had reached a stalemate, put in a request for the city's SWAT team.

¶ 7. When the SWAT team arrived, it took over negotiations, and Godec and the other officers exited the house. The SWAT team announced its presence to Koeppen and asked him what he planned to do with the knife. Koeppen responded in the same fashion as before and another circular dialogue ensued between he and the team. Because a compromise could not be reached and Koeppen still refused to leave the room, the SWAT team decided to deploy a grenade containing a chemical agent spray, oleoresin capsicum (OC), into the hallway outside the room. While wearing gas masks, the team waited for a response from Koeppen such as coughing or wheezing. No response came. When Koeppen failed to come out of the room when requested to do so by the team, the team deployed a second grenade.

¶ 8. Again, no response came from Koeppen. It was later revealed that Koeppen had avoided the grenades' chemical spray by opening a window and pressing his face against the screen. With ballistic shields and full SWAT gear, the team made a tactical approach down the hallway. Arriving at the doorway, the lead SWAT team member demanded that Koeppen show him his hands. Koeppen responded by playing games with his hands and slipping them behind a curtain. After five minutes of this behavior, the team

deployed a distractionary device, which created a temporary sensory overload with a loud bang and a bright flash. During the fifteen seconds that Koeppen's sensory perceptions were off balance from the device, the team entered the room and apprehended him. Koeppen physically resisted being handcuffed. A knife was found lying near him.

¶ 9. Koeppen was charged with failing to comply with an officer while being taken into custody with a repeater enhancer pursuant to WIS. STAT. §§ 946.415 and 939.62(1)(b).[3] After the jury returned a guilty verdict on this count, the court sentenced Koeppen to four years of imprisonment.

¶ 10. Koeppen filed a motion for postconviction relief, requesting a sentence modification. After a motion hearing, the court denied Koeppen's request. Koeppen appeals.

## DISCUSSION

### A. Unanimous Jury Verdict

¶ 11. Before his trial, Koeppen disputed the State's use of disjunctive language in the information filed against him on the failure to comply with an officer's attempt to take him into custody count. *See*

---

[3] The information charged Koeppen with four counts. In addition to the failure to comply with an officer's attempt to take him into custody count, Koeppen was charged with: one count of knowingly obstructing an officer, *see* WIS. STAT. § 946.41(1); one count of bail jumping, *see* WIS. STAT. § 946.49; and one count of disorderly conduct, *see* WIS. STAT. § 947.01. The bail jumping count was subsequently dismissed. The jury found Koeppen guilty of two counts—failing to comply with an officer's attempt to take him into custody and disorderly conduct—but returned a not guilty verdict on the obstructing an officer count.

WIS. STAT. § 946.415. Koeppen argued that because the information disjunctively phrased conceptually and factually distinct courses of conduct, the information was duplicitous. The information stated that Koeppen "did refuse to comply with an officer's lawful attempt to take him into custody, and remains in a place and through action or threat, attempts to prevent officers from taking him into custody, and further remains armed with a dangerous weapon." Section 946.415(2) describes the crime as follows:

> Whoever intentionally does all of the following is guilty of a Class E felony:
> (a) Refuses to comply with an officer's lawful attempt to take him or her into custody.
> (b) Retreats or remains in a building or place and, through action or threat, attempts to prevent the officer from taking him or her into custody.
> (c) While acting under pars. (a) and (b), remains or becomes armed with a dangerous weapon or threatens to use a dangerous weapon regardless of whether he or she has a dangerous weapon.

¶ 12. To remedy the situation, Koeppen filed a motion requesting that the State specify prior to the trial which of the alternative courses of conduct it would argue. Koeppen contended that the statute phrased "action" and "threat" in the disjunctive; therefore, the State had to choose whether to prosecute him for acting or threatening to act. The court deferred making a decision on the issue and decided to reconsider it when it prepared to instruct the jury.

¶ 13. Upon reconsidering the motion, the court concluded that the State's charge could remain in the disjunctive, and the jury would be instructed in disjunctive language also. The court relied on the *State v.*

*Cheers*, 102 Wis. 2d 367, 306 N.W.2d 676 (1981), decision that a jury could be instructed in disjunctive language for the armed robbery statute. The *Cheers* court decided that the armed robbery statute's terms "used *or* threatened the imminent use of force" were alternate methods of committing the force element of the crime. *See id.* at 398, 401–02. Consequently, it was not necessary to instruct the jury to unanimously agree to the specific manner in which the force was used. *See id.* at 401–02. Applying the *Cheers* analysis to WIS. STAT. § 946.415, the court determined that this statute's language was similar to that in the armed robbery statute and the jury would not be instructed to agree on if there was an action or a threat of action. Over Koeppen's objection, the court instructed the jury using the statute's disjunctive language.

¶ 14. The jury instruction further complicated the issue because it included more disjunctive phrases than the information. The crime was explained to the jury as:

> If you are satisfied beyond a reasonable doubt that the defendant intentionally refused to comply with an officer's lawful attempt to take him into custody, that he *retreated or remained* in a building or place and through *action or threat* attempted to prevent the officer from taking him into custody and, further, that he *remained or became armed* with a dangerous weapon *or threatened the use* of a dangerous weapon regardless of whether he has a dangerous weapon, you should find the defendant guilty. (Emphasis added.)

Koeppen argues that by instructing the jury with these disjunctive phrases and not requiring that it unanimously agree on which acts he committed, the trial court deprived him of his right to a unanimous verdict

and allowed the jury to find him guilty on evidence less than a reasonable doubt. We cannot agree.

¶ 15. The right to a jury trial, as guaranteed by article I, sections 5 and 7 of the Wisconsin Constitution, includes the right to a unanimous jury verdict. *See Holland v. State*, 91 Wis. 2d 134, 138, 280 N.W.2d 288 (1979). "Unanimity is required only with respect to the ultimate issue of the defendant's guilt or innocence of the crime charged, and unanimity is not required with respect to the alternative means or ways in which the crime can be committed." *Id.* at 143.

¶ 16. In addressing Koeppen's unanimity claim, we engage in a two-step process. We must first determine whether the statute creates only one offense with multiple modes of commission, or whether the statute creates multiple offenses defined by each distinct felony the defendant intended to commit. *See State v. Briggs*, 214 Wis. 2d 281, 289, 571 N.W.2d 881 (Ct. App. 1997). Then, if the statute creates multiple offenses, the jury must be unanimous as to each crime. *See id.* If, however, we conclude that the statute sets forth a single crime, with alternative modes of commission, unanimity is required only if the separate modes of commission are conceptually distinct. *See id.*

¶ 17. In resolving the first part of the test, we need to ascertain the legislature's intent. To do so, we look to four factors: "(1) the language of the statute; (2) the legislative history and context of the statute; (3) the nature of the proscribed conduct; and (4) the appropriateness of multiple punishment for the conduct." *Manson v. State*, 101 Wis. 2d 413, 422, 304 N.W.2d 729 (1981).

¶ 18. If we determine that the legislature intended one crime with alternative means of establishing an element of the offense, then the second part

of the test is to evaluate whether the alternative means "are of sufficient conceptual similarity to comprise but a single element of the offense." *Cheers*, 102 Wis. 2d at 400 (citation omitted). Because the evidence may demonstrate situations where the line between a statute's alternative modes of commission is not clear, the jury does not have to split hairs over nomenclature and agree on the precise term for the conduct; instead, it must agree on the factual theory or concept that makes the defendant liable for the crime. *See State v. Baldwin*, 101 Wis. 2d 441, 450, 304 N.W.2d 742 (1981).

¶ 19. The generous use of the disjunctive construction in WIS. STAT. § 946.415 gives rise to a number of possible combinations of proscribed activity. Koeppen's chief contention is with the "action" and "threat" combination. He argues that the jury should have been required to agree on which conduct he performed. We begin our review of this issue by considering the legislative intent for § 946.415.

¶ 20. WISCONSIN STAT. § 946.415 was drafted in response to a deputy district attorney's letter to a legislator. *See* Letter from Thomas J. Gritton, Deputy District Attorney for Winnebago County, to Rep. Carol Owens, Wisconsin State Assembly 1 (Feb. 10, 1995) (Legislative Reference Bureau drafting file for 1995 Wis. Act 93, 1995 A.B. 276 (LRB–3065/2)). In the letter, the deputy district attorney informed the legislator that legislation needed to be created to deter a reoccurring problem where suspected criminals would barricade themselves in their residences while armed and then refuse to exit and allow police to take them into custody. He noted that these situations were very costly because they often necessitated an emergency response team to negotiate with the suspect, they jeopardized officers' safety and they often compelled

officers to use deadly force. *See id.* Because of these reasons, he requested legislation with stiffer penalties than the existing related crime of disorderly conduct and that would create a greater deterrence to such conduct. The legislative analysis accompanying the resulting assembly bill, 1995 A.B. 276, indicates that § 946.415 increased the potential prison time for this conduct from nine months to two years.

■

¶ 21. Considering the above legislative history and other relevant criteria, we hold that WIS. STAT. § 946.415 delineates one crime that can be committed in several ways. The history indicates that the statute is directed at a single result—criminalizing suspects' armed, physical refusals to comply with police officers' efforts to take them into custody. The legislature sought to proscribe a single wrong rather than create different means of committing separate and distinct offenses. Stated in the simplest terms, the offense has a refusal component, a physical manifestation of the refusal with threat component and a dangerous weapon component. The statute's use of disjunctive terms merely describes the alternative means for committing each component.

¶ 22. Next, we consider the nature of the proscribed conduct to determine whether the statute's alternative means of conduct are similar or conceptually different. When the same factual theory or concept supports either alternative conduct, the modes of commission are conceptually similar. *See Baldwin,* 101 Wis. 2d at 450. We are guided in our analysis of this issue, as was the trial court, by the *Cheers* decision.

¶ 23. The *Cheers* court resolved that armed robbery was a single offense committed by the alternate

means of either using or threatening to use force. It dismissed the appellants' argument that the two actions were conceptually different, reasoning that both actions would compel owners to surrender their property. *See Cheers*, 102 Wis. 2d at 400–01. It determined that jury unanimity was only required as to whether the force component was present in the evidence, not as to the specific form of force used. *See id.* at 402. "The jury should not be obliged to decide between two statutorily prohibited ways of committing the crime if the two ways are practically indistinguish-. able." *Id.* at 401 (citation omitted).

¶ 24. Similar to the result in *Cheers*, we determine that "action" and "threat" in WIS. STAT. § 946.415 are conceptually similar because both terms express alternative ways of threatening an officer to prevent oneself from being taken into custody. Likewise, "retreating" and "remaining" are alternative means of physically manifesting the refusal; and "remaining armed," "becoming armed" and "threatening to use a dangerous weapon" are alternative means of committing the threat with a dangerous weapon. The same factual theories are used to prove each term of the components; they are thus conceptually similar. Because the legislature's intention in creating § 946.415 was to proscribe the several modes of conduct whereby suspects refuse to comply with an officer's attempt to take them into custody using a dangerous weapon, the jury was only required to unanimously agree that each component of the crime was committed. The court's instruction to the jury using the statute's disjunctive language neither deprived Koeppen of his right to a unanimous verdict as to each element of the crime nor relieved the State of its bur-

den of proving every element of the crime beyond a reasonable doubt. An instruction requiring unanimity was not required.

### B. Trial Court Error Arguments

#### 1. Other Acts Evidence

¶ 25. Prior to trial, the State moved the court to allow it to introduce evidence of a 1994 arrest at Koeppen's home "to explain why officers felt compelled to use OC spray, as well as a flash bang device" to apprehend him and to also establish that he knew his actions were unlawful. The 1994 disorderly conduct arrest occurred when Koeppen was drunk and resisted arrest by hiding in his basement while clutching a homemade .22 caliber firearm. The court allowed the evidence to be introduced at trial because it demonstrated intent, and the court gave the jury a cautionary instruction on how to use this evidence. Koeppen objects to the admission of this evidence, arguing that it is irrelevant and prejudicial.

¶ 26. WISCONSIN STAT. § 904.04(2) prohibits the admission into evidence of "other crimes, wrongs, or acts" if used to demonstrate a person's character and propensity to act according to this character. The statute does allow exceptions for evidence offered for the purposes of proving "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* The first step for determining if other acts evidence was properly admitted is to evaluate whether it is probative of one of these acceptable purposes. *See State v. Sullivan*, 216 Wis. 2d 768, 772, 576 N.W.2d 30 (1998). Next, we consider whether the evidence meets the relevancy factors of WIS. STAT. § 904.01. *See Sullivan*, 216 Wis. 2d at 772. The final

consideration is whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. *See id.* at 772–73.

¶ 27. A trial court's decision to admit evidence will be upheld if we determine that there was a reasonable basis to admit it. *See State v. Rushing*, 197 Wis. 2d 631, 645, 541 N.W.2d 155 (Ct. App. 1995). Our determination depends on whether the trial court exercised its discretion in accordance with accepted legal standards and in accordance with the facts of record when ruling on the admissibility of the evidence. *See id.* We will independently examine the record to determine whether it provides a reasonable basis for the ruling where the trial court fails to adequately explain its discretionary ruling. *See id.*

¶ 28. The State contends that the 1994 arrest evidence was admissible for the permissible purpose of showing Koeppen's intent and the absence of mistake. At trial, Koeppen argued that he did not engage in acts to prevent officers from taking him into custody; rather, he argues that he simply refused to come out of the room. The 1994 arrest evidence negates Koeppen's claim. It shows that under similar circumstances he had withdrawn from the police and while armed waited for them to apprehend him. "Evidence of other acts may be admitted if it tends to undermine an innocent explanation for an accused's charged criminal conduct." *Sullivan*, 216 Wis. 2d at 784. We agree with the State that the use of other acts evidence in this case to prove intent or absence of mistake is permissible.

¶ 29. Turning to the second step of our analysis, we consider whether the evidence is relevant: Does it relate to a consequential fact or proposition, and does it make that fact more or less probable? *See id.* at 785–86. The parties agree, as does this court, that the charged

crime requires that Koeppen *intentionally* refused to comply with an officer's lawful attempt to take him into custody and that offering the evidence to prove intent or absence of mistake is consequential. The parties do not agree, however, on the probative value of this evidence.

¶ 30. "The probative value of the other acts evidence in this case depends on the other incident's nearness in time, place and circumstances to the alleged crime or to the fact or proposition sought to be proved." *Id.* at 786. A strong similarity between the other acts and the charged offense enhances the probability that the similar acts are not a coincidence. *See id.* at 786–87. In both the 1994 arrest and the facts of this case, Koeppen had been drinking; he was at home; he failed to voluntarily cooperate with a police investigation; he withdrew to a place away from the authorities; he did not voluntarily leave his hiding place when asked to do so; and he waited for the police to apprehend him with a dangerous weapon near or on his person. Because of the strong similarities in the two incidents, we conclude that the other acts evidence was probative of Koeppen's intent and the absence of mistake.

¶ 31. Proceeding to the final step of our analysis, we next evaluate whether the trial court properly exercised its discretion by balancing the probative value of the other acts evidence against the danger of unfair prejudice, confusion of the issues, misleading the jury or creating an unnecessary delay. *See id.* at 789. The State contends that the evidence was not unfairly prejudicial and, in any event, such an effect was lessened by the court's cautionary instruction to the jury. We agree that the 1994 arrest evidence was highly proba-

tive and that the cautionary instruction significantly diminished the possibility that the jury would find Koeppen guilty simply because it viewed him as a bad person. We conclude that the trial court properly exercised its discretion by admitting the other acts evidence.

## 2. Sentence Modification

¶ 32. Koeppen asserts that the trial court erred by denying his sentence modification motion based on a new factor. The new factor that Koeppen claims was not before the court at sentencing is the level of community support he maintains. At the sentencing hearing, the trial judge observed that Koeppen's family was not present and remarked:

> My theory in all that is . . . [your family has] basically left you out there, Mr. Koeppen, to fend for yourself at this point. They must be exhausted by the tumultuous reoccurrences of the invasions of your home by police, by your chronic alcoholism, by your total absurd conduct over the last decade as to just have had enough of you.

Koeppen wanted to offer the court his son's testimony and letters from other community members stating that despite his criminal activities and other problems, they still supported him. He argued that this information was unknown to the court when it sentenced him and was therefore a new factor.

¶ 33. The purpose of a sentence modification is to correct an unjust sentence. *See State v. Franklin*, 148 Wis. 2d 1, 14, 434 N.W.2d 609 (1989). Before a sentence will be modified, the defendant must demonstrate, by clear and convincing evidence, that there is a new factor justifying the court's reconsideration. *See id.* at 8, 9.

A new factor is a fact relevant to the imposition of the sentence and unknown to the trial court at the time of sentencing, *see State v. Kaster*, 148 Wis. 2d 789, 803, 436 N.W.2d 891 (Ct. App. 1989), or which frustrates the sentencing court's intent, *see State v. Michels*, 150 Wis. 2d 94, 99, 441 N.W.2d 278 (Ct. App. 1989). We review without deference the question of law of whether the facts constitute a new factor. *See Franklin*, 148 Wis. 2d at 8.

¶ 34. In denying Koeppen's sentence modification motion, the court indicated that its comments about Koeppen's family not being present at sentencing were based on its familiarity with the entire record in the criminal action against Koeppen and that the comments should not be lifted out of context. Above all, Koeppen had the opportunity to present witnesses at the sentencing hearing. His failure to do so does not constitute a new factor. Information regarding Koeppen's support from the community is simply tangential and was not a relevant factor in the sentencing. *See id.* at 15. Because Koeppen has failed to demonstrate the existence of a new factor supporting his sentence modification motion, his argument fails.

### C. Proof of Habitual Offender Status

¶ 35. Koeppen claims that the State did not comply with the WIS. STAT. § 973.12(1) requirement that it must prove prior felony convictions in order for the habitual offender enhancement to apply.[4] At sentenc-

---

[4] WISCONSIN STAT. § 973.12 states in relevant part:

(1) Whenever a person charged with a crime will be a repeater or a persistent repeater under s. 939.62 if convicted, any applicable prior convictions may be alleged in the complaint, indictment or information or amendments so alleging at any time

ing, Koeppen declined to answer the court's question asking him to acknowledge nine prior criminal convictions. The State then presented the court with certified judgments of conviction to establish the habitual offender allegation. The court took judicial notice of the judgments without any objection from Koeppen.

¶ 36. Koeppen's appellate argument stems from the fact that the certified judgments of conviction are not included in the appellate record. He argues that the convictions are insufficiently proven because all that is present in the appellate record is his attorney's admission to the convictions and not his own. *See State v. Farr*, 119 Wis. 2d 651, 659, 350 N.W.2d 640 (1984) (admission of a prior conviction must be a direct and specific admission by the defendant). We apply a de novo standard of review to the issue of whether Koeppen's habitual offender enhancement was adequately proven. *See State v. Flowers*, 221 Wis. 2d 20, 31, 586 N.W.2d 175 (Ct. App.), *review denied*, 222 Wis. 2d 675, 589 N.W.2d 630 (Wis. Dec. 8, 1998) (No. 97–3682–CR).

**[5]**

¶ 37. The record demonstrates that the State proved the habitual offender allegation at the sentencing hearing. The State offered certified judgments of conviction as permitted by WIS. STAT. § 973.12(1), the court took judicial notice of the judgments and Koeppen never objected to the documents or the procedure.

before or at arraignment, and before acceptance of any plea. . . . *If the prior convictions are admitted by the defendant or proved by the state*, he or she shall be subject to sentence under s. 939.62 unless he or she establishes that he or she was pardoned on grounds of innocence for any crime necessary to constitute him or her a repeater or a persistent repeater. An official report of the F. B. I. or any other governmental agency of the United States or of this or any other state shall be prima facie evidence of any conviction or sentence therein reported. (Emphasis added.)

Even if the trial court did not include these documents in the appellate record, the documents' existence at the time of sentencing is not negated because, as the appellant, Koeppen had the duty to ensure the completeness of the appellate record. *See Fiumefreddo v. McLean,* 174 Wis. 2d 10, 26–27, 496 N.W.2d 226 (Ct. App. 1993). In such situations, we must assume that the missing material supports the trial court's ruling. *See id.* at 27. Consequently, Koeppen's argument lacks merit.

### D. Sufficiency of the Evidence

¶ 38. Koeppen presents a final contention that the evidence does not support his conviction. More specifically, he argues that it was not adequately proven that he refused to comply with the officers' attempt to take him into custody by an "action" or a "threat." This argument relates back to his jury unanimity argument. In essence, he claims that the evidence did not support the physical manifestation of refusal with threat component of the crime. We disagree.

¶ 39. When reviewing the sufficiency of the evidence to support a conviction, this court will not substitute its judgment for that of the jury, "unless the evidence, viewed most favorably to the [S]tate and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." *State v. Poellinger,* 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990). If a reasonable possibility exists that the jury could have adduced guilt from the evidence presented at trial, this court may not overturn the verdict. *See id.*

¶ 40. Koeppen's argument boils down to whether there was sufficient evidence that he "remained" in or "retreated" to the back room and "threatened" the police. Two sides of the story were argued at trial.

Koeppen contended that he just happened to be in the room with a knife left over from dinner, and, in contrast, the police officers testified that he intentionally stayed in the room and armed himself with the weapon to prevent his being taken into custody. Clearly, the jury accepted the officers' version of the events.

¶ 41. We find plenty of evidence to support the jury's verdict. Koeppen phoned 911 and then hung up the phone. The dispatcher called back to the Koeppen residence, spoke with Jeri and learned that Koeppen had been drinking and that a verbal domestic dispute had taken place. Police officers were sent to investigate the 911 call and were aware that if Koeppen was indeed drinking, he would be in violation of his probation conditions and would need to be taken into custody. Upon arrival at Koeppen's residence, Jeri informed the officers that Koeppen had been drinking, refused to come to the door, was in the back room and had a knife with him. When repeatedly asked by the police if he had a knife, Koeppen acknowledged that he did and also warned the officers not to come near him. After Koeppen was finally apprehended in the back room, the police found a knife near him. We discern that this evidence is substantial enough to support Koeppen's conviction, and we dismiss his argument.

## CONCLUSION

¶ 42. In summary, we determine that the trial court did not commit any errors and that the evidence sufficiently supports the jury's verdict. Koeppen's constitutional right to a unanimous verdict was met because the jury unanimously agreed to each component of the crime. The disjunctive phrases in WIS. STAT. § 946.415 that Koeppen asserts are conceptually and

factually distinct were intended by the legislature to express the alternative modes of conduct that can constitute one crime. Furthermore, we resolve that the phrases are conceptually similar because evidence of the same theory of conduct would be presented to prove either term of the phrases.

¶ 43. Regarding Koeppen's contention that evidence of his 1994 arrest was improperly admitted, we disagree and conclude that it was relevant evidence and highly probative of his intent and the absence of mistake. We also determine that Koeppen failed to demonstrate a new factor necessitating a sentence modification. Lastly, we conclude that Koeppen's prior felony convictions were sufficiently proven to support the application of the habitual offender enhancement to his sentence.

*By the Court.*—Judgment and order affirmed.