Sᴛᴀᴛᴇ of Wisconsin, Plaintiff-Respondent,

v.

Kelley L. Hᴀᴜᴋ, Defendant-Appellant.

Court of Appeals

*Nos. 01–1668–CR, 01–1669–CR. Submitted on briefs April 17, 2002.—Decided August 1, 2002.*

2002 WI App 226

(Also reported in 652 N.W.2d 393.)

*See Callaghan's Wisconsin Digest, same topic and section number.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *David D. Cook*, Monroe.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Jeffrey J. Kassel*, assistant attorney general.

Before Dykman, Roggensack and Deininger, JJ.

¶ 1. DYKMAN, J. Kelley Hauk appeals from two judgments of conviction for bail jumping and from two orders denying her motions for postconviction relief. With regard to the first conviction for bail jumping, Hauk presents arguments regarding the sufficiency of the evidence, the circuit court's authority to approve a stipulation, waiver of her right to a jury trial, and ineffective assistance of counsel. In addition, she argues that if we reverse the first bail jumping conviction, we should order resentencing or sentence modification on the second bail jumping conviction.

¶ 2. Although the State presented sufficient evidence to prove that Hauk committed a crime, we conclude that Hauk did not waive her right to have a jury determine all the elements of bail jumping. Accordingly, we reverse and remand for a new trial with respect to the first bail jumping conviction. Further, we conclude that the reversal of Hauk's first conviction constitutes a new factor with regard to the sentence for her second bail jumping conviction. Accordingly, we remand to allow the circuit court to exercise its discretion to determine whether the new factor justifies a sentence modification.

## BACKGROUND

¶ 3. This is an unusual case with a somewhat unusual background. The events leading up to Hauk's bail jumping charge began when the State charged

584

Hauk with interference with custody. After her arrest, Hauk was released on bond. One of her conditions of release was to not "commit any crimes or engage in any criminal activity."

¶ 4. While Hauk was free on bond, a friend of Hauk's, Cynthia Guevara, contacted the Green Bay Police Department claiming that Hauk had hired someone to murder her ex-boyfriend and his current wife. Detective Scot Miller met with Guevara later that same evening. Miller interviewed Guevara, and wrote out a statement that Guevara reviewed and signed. Guevara repeated in the statement that Hauk told Guevara that she hired Stanley Thomas, a co-worker, to kill her ex-boyfriend and his wife. However, after speaking with Guevara, Hauk had agreed to call Thomas to tell him "not to do it, to call the whole thing off."

¶ 5. Hauk called Guevara while Miller was at Guevara's home. Guevara invited Miller to listen to the conversation on another telephone without telling Hauk that he was doing so. Miller testified that the conversation was "about hiring this Mr. Thomas to kill her ex-boyfriend and his new wife and how Cindy [Guevara] had talked her out of that and that from what I can remember she was going to place a call to Mr. Thomas and have this alleged hit stopped."

¶ 6. The following day Hauk gave her own statement to Miller, in which she confessed that she had spoken with Thomas. She stated that after complaining to Thomas that her son was being sexually abused, Thomas told her "he would kill the guy." The next day Hauk told Thomas "to go ahead and make the call." However, after talking with Guevara, Hauk decided "to call it off." She contacted Thomas and told him "to stop the hit."

¶ 7. Rather than charge Hauk with attempted murder, conspiracy or solicitation, the State charged Hauk with bail jumping, contrary to Wis. Stat. § 946.49(1)(b) (1997–98).[1] Although Hauk was ultimately acquitted of the interference with custody charge, she was on bond at the time her conversations with Thomas allegedly took place. The State alleged that Hauk had intentionally failed to comply with a term of her bond not to "commit any crimes or engage in any criminal activity" when she "made arrangements to have two people killed." Hauk moved to dismiss the charge on the grounds that the facts as alleged in the complaint did not provide a sufficient basis for the charged crime. The circuit court denied the motion.

¶ 8. Hauk's attorney filed a document with the court stating that the defendant wished to stipulate to some of the elements of bail jumping. The circuit court approved it on the first day of trial. As a result, the jury was not informed that Hauk was charged with bail jumping and did not decide whether Hauk was charged previously with a felony or misdemeanor, whether she was released from custody on bond, or whether she intentionally failed to comply with the terms of her bond. Instead, the jury was asked to determine only whether Hauk had committed a crime. The court, however, did not decide prior to trial which crime would be submitted to the jury.

¶ 9. After testimony from the ex-boyfriend, Miller, Guevara and a second detective,[2] the circuit court concluded that it would instruct the jury on the crime of solicitation under Wis. Stat. § 939.30. The jury found

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

[2] The State did not call Thomas to testify.

Hauk guilty and the circuit court entered a judgment of conviction for bail jumping.

¶ 10. Hauk failed to appear at her sentencing hearing. As a result, the State filed a complaint against Hauk, charging her with another count of bail jumping. She pleaded no contest to the second bail jumping offense, and the circuit court sentenced her to four years in prison for the first bail jumping charge, and five years for the second bail jumping charge, to run concurrently with the first sentence. Hauk filed post-conviction motions in both cases, which the circuit court denied. Hauk appeals.

## DECISION

### A. Sufficiency of the Evidence

#### 1. Standard of Review

[1, 2]

¶ 11. The parties agree that the standard for reviewing the sufficiency of a jury verdict was set forth in *State v. Poellinger*, 153 Wis. 2d 493, 451 N.W.2d 752 (1990). If, in viewing the evidence in the light most favorable to the conviction, no reasonable jury could have found guilt beyond a reasonable doubt, the conviction must be reversed. *Id.* at 501. We agree with Hauk that, under this standard, a conviction cannot be sustained on the sole basis that there is "some evidence" supporting a guilty verdict. Rather, there must be sufficient evidence to enable a reasonable jury to find guilt *beyond a reasonable doubt. Jackson v. Virginia*, 443 U.S. 307, 317–18 (1979).
██

¶ 12. We disagree, however, that we must reverse the conviction if "any trier of fact" would be able to "reconcile the evidence upon any reasonable hypothesis

consistent with the defendant's innocence." Hauk has confused the standard for the *jury* to use in determining whether reasonable doubt exists and the standard of *appellate review*. It is the role of the fact finder, not this court, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts. *Poellinger*, 153 Wis. 2d at 506. Therefore, although the jury is required to exclude *every* reasonable hypothesis of the defendant's innocence before returning a guilty verdict, we must affirm the jury's finding if there is *any* reasonable hypothesis that supports the conviction. *State v. Blair*, 164 Wis. 2d 64, 68 n.1, 473 N.W.2d 566 (Ct. App. 1991).

2. Necessity of a Conviction for the Underlying Crime

¶ 13. Under WIS. STAT. § 969.03(2), when an individual charged with a felony is released on bond, one of the conditions of release must always be that the defendant "not commit any crime." Hauk's bond required her "not [to] commit any crimes or engage in any criminal activity." Hauk contends that there was insufficient evidence to prove that she violated this condition because she was never convicted of an underlying crime.

¶ 14. We agree with Hauk that there is no substantive difference between "committing a crime" and "engaging in criminal activity." One who engages in criminal activity is by definition also committing a crime. We disagree, however, that the State must obtain a conviction for the underlying crime in order to prove that the defendant violated the bail jumping statute. In essence, Hauk's contention is that if the State wants to obtain a conviction for violating a bond by committing a crime, it must charge the defendant with *both* bail

jumping and the underlying crime. Not only would such a requirement encourage multiple charges for the same conduct, but it is also unsupported by WIS. STAT. § 969.03(2). Hauk's bond does not prohibit her from being *convicted* of a crime but rather required her not to *commit* any crimes.

¶ 15. Hauk nonetheless contends that a conviction was required, relying on *State v. Hansford*, 219 Wis. 2d 226, 580 N.W.2d 171 (1998), and *State v. West*, 181 Wis. 2d 792, 512 N.W.2d 207 (Ct. App. 1993). In *Hansford*, the supreme court reversed a conviction for obstructing an officer because the defendant was denied his right to a jury trial under art. I, § 7 of the Wisconsin Constitution. *Hansford*, 219 Wis. 2d at 243. Hansford had also been charged with and convicted of bail jumping because he was on bond at the time he was arrested for obstructing, and one of his requirements was to not commit any crimes. *Id.* Although Hansford waived his right to a jury on this charge, the supreme court nevertheless reversed this conviction as well because "the bail jumping conviction was premised *solely* upon the Defendant's obstructing conviction." *Id.* at 245 (emphasis added).

¶ 16. *Hansford* does not, as Hauk suggests, hold that a conviction for the underlying crime is a prerequisite to finding that a defendant has violated a term of his or her bond by committing a crime. Rather, the circuit court in *Hansford* had based its finding that the defendant was guilty of bail jumping entirely on the jury's finding that the defendant was guilty of obstructing. *Id.* at 244–45. When the supreme court reversed the obstruction conviction, it left no evidence to support the bail jumping conviction. The court explained: "Absent a finding that the Defendant committed a crime, the State has not proved beyond a reasonable doubt an

589

element of the bail jumping charge." *Id.* at 245. Because in Hauk's case there *was* a finding that she committed a crime—solicitation—*Hansford* does not apply.

¶ 17. In *West*, the defendant was released on bail in Wisconsin on the condition that she not commit any crimes. *West*, 181 Wis. 2d at 794. While released, however, she was charged with and convicted of theft in Ohio. *Id.* Subsequently, the State of Wisconsin charged her with bail jumping. *Id.* West argued that she did not violate her bond because she had not committed any crimes *in Wisconsin. Id.* at 795. Applying a dictionary definition of "crime," we concluded that prosecutions for bail jumping were not limited to Wisconsin crimes, but could also be predicated on crimes committed in other states. *Id.* at 795–96.[3]

---

[3] We concluded that in the context of a bond condition not to commit any crimes, "crime" meant "an offense against the social order . . . that is dealt with by community action rather than by an individual or kinship group." *State v. West*, 181 Wis. 2d 792, 796, 512 N.W.2d 207 (Ct. App. 1993). We question whether this is the definition that the legislature intended courts and juries to apply in determining whether a defendant has violated a condition of release by committing a crime. WISCONSIN STAT. § 939.12 defines "crime" as "conduct which is prohibited by state law and punishable by fine or imprisonment or both." Although the definition of crime in WIS. STAT. § 939.12 applies explicitly only in chs. 939 to 948 and 951, *see* WIS. STAT. § 939.22(6), we view this definition as instructive of legislative intent in related contexts. *See State v. Sveum*, 2002 WI App 105, ¶ 10, 648 N.W.2d 496, *review denied*, 2002 WI 111 (July 26, 2002) (No. 01–0230); *see also State v. Mando Enters., Inc.*, 56 Wis. 2d 801, 203 N.W.2d 64 (1973).

Even assuming, however, that *West* was correct in applying a dictionary definition, we disagree that the definition chosen was "the most common and appropriate." *State v. Curiel*, 227 Wis. 2d 389, 405, 597 N.W.2d 697 (1999). An "offense against the

¶ 18. In arguing that *West* requires a conviction for the underlying crime, Hauk relies on one sentence: "We therefore conclude that when West was charged and convicted in Ohio of theft, she committed a 'crime' and intentionally violated an express condition of her bond." *Id.* at 797. We disagree that this sentence supports Hauk's position. Like *Hansford*, *West* acknowledges only that a conviction is *one* way in which the State can prove that the defendant committed a crime; it does not hold the converse, namely, that a conviction for the underlying crime is *necessary* to prove that the defendant violated the bond.

■

¶ 19. We therefore conclude that as long as there is evidence sufficient to allow a reasonable jury to conclude beyond a reasonable doubt that a defendant intentionally violated his or her bond by committing a crime, that evidence is not required to be in the form of a conviction for the underlying crime.

### 3. Corroboration of Hauk's Confession

■

¶ 20. In Wisconsin, as in the federal courts, there is a common law rule that "conviction of a crime may not be grounded on the admission or confessions of the

---

social order" could potentially include civil forfeitures (which are not crimes under Wis. Stat. § 939.12), or even conduct that is not prohibited by law but considered socially unacceptable. It could also potentially exclude conduct that *is* considered a crime under Wis. Stat. § 939.12. In general, the definition in *West* provides little guidance for fact finders in determining whether behavior is a crime. More importantly, defendants who are on bond have no objective method of determining whether their conduct is an "offense against the social order" and thus such a definition could raise questions of due process.

591

accused alone." *State v. Verhasselt*, 83 Wis. 2d 647, 661, 266 N.W.2d 342 (1978); *see also Opper v. United States*, 348 U.S. 84 (1954).[4] Rather, there must be corroboration of a "significant fact" in order to sustain a conviction. *Schultz v. State*, 82 Wis. 2d 737, 753, 264 N.W.2d 245 (1977). "Such corroboration is required in order to produce confidence in the truth of the confession." *Holt v. State*, 17 Wis. 2d 468, 480, 117 N.W.2d 626 (1962).

¶ 21. Hauk argues that all of the evidence relied upon by the State consists of extra-judicial statements that she made to either Detective Miller or her friend Guevara and therefore there was insufficient evidence to convict her. The State contends that the corroboration rule for confessions applies *only* to statements made to the police, and that Hauk's confession at the police station was sufficiently corroborated by the statements she made to Guevara and the telephone conversation that she had with Guevara that was overheard by Miller.

¶ 22. No Wisconsin case has explicitly decided whether the corroboration rule applies to *all* extra-judicial statements made by the accused or only those made to the police. On its face, the rule as it is stated in *Verhasselt* and other cases does not make a distinction based on to whom the statement is made. In at least one case, however, the supreme court has implied that the context of the admission or confession was relevant. *See*

_____

[4] Although the standard in Wisconsin and federal courts is not identical, both agree that a defendant's confession must be corroborated to sustain a guilty verdict. Neither the United States Supreme Court nor the Wisconsin Supreme Court has ever held that the corroboration rule is required by the State or federal constitutions.

*Triplett v. State*, 65 Wis. 2d 365, 222 N.W.2d 689 (1974).[5]
In *Triplett* the defendant confessed to the police that he
had been involved in the murder of a police officer. *Id.* at
366. He was later tried and convicted of first-degree
murder. *Id.* at 367. On appeal, the defendant argued
that there was insufficient evidence corroborating his
confession to support a conviction. *Id.* The court dis-
agreed, noting that there was "corroboration of many
significant facts." *Id.* at 372. Among the corroborating
evidence discussed by the court was testimony by a
"fellow prison inmate" who testified regarding conver-
sations he had with the defendant in which the defen-
dant admitted that he had committed the murder. *Id.*
The court further noted that the inmate's testimony
was "itself sufficient" to corroborate the defendant's
confession. *Id.*

¶ 23. Hauk asserts that the language in *Triplett* is
not controlling because the court also relied upon other
evidence, including a gun found in the defendant's car,
and a witness who saw the defendant leaving his
apartment with a gun near the time of the murder and
then return a few hours saying that he had just "killed
a pig." *Id.* at 372–73. Therefore, Hauk argues, the

---

[5] *But see State ex rel. Washington v. Schwarz*, 2000 WI App
235, 239 Wis. 2d 443, 620 N.W.2d 414, *review denied*, 2001 WI
43, 242 Wis. 2d 545, 629 N.W.2d 784 (Mar. 6, 2001) (No.
00–0004). In *Washington*, the department of corrections re-
voked Stanley Washington's parole based on an uncorroborated
statement, made to a member of his relapse prevention group,
that he committed another sexual assault. *Id.* at 446–47. On
appeal, we appeared to assume that the corroboration rule
applies even to statements made to private citizens. *See id.* at
452–53. We never decided this issue, however, because we
concluded that the rule did not apply in the context of probation
revocation proceedings. *Id.* at 454.

statement by the court that the inmate's testimony was "itself sufficient" was dicta because it was not essential to the determination of the issue. *See State v. Sartin*, 200 Wis. 2d 47, 60 n.7, 546 N.W.2d 449 (1996). Even assuming, however, that the court's statement is dicta, it nevertheless expresses the view of the supreme court and we believe that we should follow it unless there are compelling reasons to do otherwise.

¶ 24. The primary rationale for the corroboration rule is that it helps to insure the reliability of the confession. *See Holt*, 17 Wis. 2d at 480. But the rule does not assume that *all* confessions are unreliable. If this were the case, then there would be no exceptions to the rule. The supreme court has held, however, that the rule does not apply when a confession is made in court. *See Mularkey v. State*, 199 Wis. 269, 271–72, 225 N.W. 933 (1929). Further, most jurisdictions are in agreement that no corroboration is required when an admission is made before the crime was committed. *See Warszower v. United States*, 312 U.S. 342, 347 (1941); *Castillo v. State*, 614 P.2d 756, 759 (Alaska 1980); *State v. Saltzman*, 44 N.W.2d 24, 28–29 (Iowa 1950); *State v. Pietrzak*, 41 P.3d 1240, 1245–46 (Wash. Ct. App. 2002). This suggests that the context of the confession is important. In explaining why it was requiring corroboration for a confession, the Supreme Court explained:

> Confessions may be unreliable because they are coerced or induced . . . . Moreover, though a statement may not be "involuntary" within the meaning of this exclusionary rule, still its reliability may be suspect if it is extracted from one who is under the pressure of a police investigation—whose words may reflect the strain and confusion attending his predicament rather than a clear reflection of his past.

*Smith v. United States*, 348 U.S. 147, 153 (1954). The Court then held that the corroboration rule applies

when "the admission is made after the fact to an official charged with investigating the possibility of wrongdoing." *Id.* at 155.

¶ 25. This discussion makes clear that the main concern behind the corroboration rule is that an accused will feel "coerced or induced" when he or she "is under the pressure of a police investigation" and make a false confession as a result.[6] Concerns about police pressure are not implicated, however, when, as in Hauk's case, a confession is made to a *friend* before a police investigation was even initiated. Although there is always a possibility that an individual will falsely confess to a crime, the Supreme Court instructed in *Smith* that the rule's "application should be scrutinized lest the restrictions it imposes surpass the dangers which give rise to them." *Id.* at 153.

¶ 26. In our view, applying the corroboration rule in this case would not serve the purposes for which the rule was created. We therefore conclude that because Hauk's statements were made to a friend before there was a police investigation, the corroboration rule does not apply to those statements. *Cf. United States v. Simmons*, 923 F.2d 934, 954 (2d Cir. 1991) (holding that rule does not apply to statements made to coconspirators); *United States v. Raymond*, 793 F.2d 928, 931 (8th Cir. 1986) (holding that rule does not apply to admissions made before arrest). We also conclude that Guevara's and Miller's testimony provided sufficient evidence to corroborate Hauk's confession to the police.

---

[6] A number of courts have questioned the continuing viability of this rationale after *Miranda v. Arizona*, 384 U.S. 436 (1966), which requires officers to inform suspects in custody, among other things, that they have the right to remain silent. *See, e.g., United States v. Dickerson*, 163 F.3d 639, 641 n.2 (D.C. Cir. 1999).

### 4. Sufficiency of the Evidence that Hauk Unequivocally Indicated that She Intended Murder Be Committed

¶ 27. The crime ultimately submitted to the jury was solicitation. Under Wis. Stat. § 939.30, an individual commits solicitation when, "with intent that a felony be committed, [he or she] advises another to commit that crime under circumstances that indicate unequivocally that he or she has the intent."

¶ 28. Relying on the jury instruction for solicitation, Hauk contends that the State failed to prove that she "unequivocally" intended that the ex-boyfriend be murdered. The jury instruction defines "unequivocally" as meaning that "no other inference or conclusion can reasonably and fairly be drawn from the defendant's acts." Wis JI—Criminal 550 (Rel. No. 39–4/2001). Hauk asserts that this definition is unusual in that it requires the jury to draw all reasonable inferences in favor of the defendant. Further, she argues that if we conclude that there is any reasonable inference that she did not unequivocally intend that murder be committed, we must reverse the conviction.

¶ 29. Hauk is incorrect with respect to both of her contentions. First, there is nothing unusual about requiring the *jury* to make reasonable inferences in favor of the defendant. As we have noted above in ¶ 12, the jury is required in all criminal cases to exclude every reasonable hypothesis of the defendant's innocence before returning a guilty verdict. But Hauk again confuses the standard for the jury and the standard of appellate review. The jury must draw all reasonable inferences in favor of the defendant, but we must make all reasonable inferences in favor of the jury's decision.

*See State v. Page,* 2000 WI App 267, ¶ 9, 240 Wis. 2d 276, 622 N.W.2d 285, *review dismissed,* 2001 WI 15, 241 Wis. 2d 213, 626 N.W.2d 809 (Feb. 14, 2001) (No. 99–2015–CR). We are aware of no Wisconsin case that has applied Hauk's proposed standard of review, and Hauk has not cited to any. Rather, in our examination of the cases reviewing whether the State sufficiently proved the defendant acted unequivocally under the solicitation and attempt statutes,[7] courts have not deviated from the general standard of review. *See, e.g., State v. Stewart,* 143 Wis. 2d 28, 31, 420 N.W.2d 44 (1988); *State v. Cartagena,* 99 Wis. 2d 657, 665, 299 N.W.2d 872 (1981).

██

¶ 30. Hauk concedes that a jury could reasonably conclude that she intended to have her ex-boyfriend killed. We therefore reject Hauk's contention that there was insufficient evidence for the jury to find that she committed solicitation.

## B. Jury Trial Waiver

¶ 31. The jury in Hauk's trial never determined several of the elements of bail jumping. Specifically, pursuant to a stipulation, the jury never determined whether Hauk had been charged with a felony or misdemeanor, whether she was released from custody on bond, or whether she intentionally failed to comply with the terms of the bond. Rather, the jury found only that Hauk committed the crime of solicitation. Hauk contends that her right to a jury trial under the Sixth Amendment to the United States Constitution and article I, § 7 of the Wisconsin Constitution was violated

---

[7] The meaning of "unequivocally" in the solicitation and attempt statutes is the same. Wis JI—Criminal 550.

because she never validly waived her right to have the jury determine all the elements of the crime. Alternatively, she argues that the circuit court's colloquy was defective. We agree with Hauk that she never waived her right to a jury trial, and therefore do not determine whether there was an adequate colloquy.

¶ 32. The State first suggests that the analysis regarding whether a defendant has waived the right to a jury is different depending on whether the defendant *completely* waives the right to a jury trial or only *partially* does so. We disagree that this is a meaningful distinction. The right to a jury trial includes the right to have a jury determine *each element* of the crime. *United States v. Gaudin*, 515 U.S. 506, 522–23 (1995); *State v. Villarreal*, 153 Wis. 2d 323, 326, 450 N.W.2d 519 (Ct. App. 1989); *see also State v. Gordon*, 2002 WI App 53, ¶¶ 44–45, 250 Wis. 2d 702, 641 N.W.2d 183, *review granted,* 2002 WI 48, 252 Wis. 2d 148, 644 N.W.2d 685 (Apr. 22, 2002) (No. 01–1679–CR). Further, defendants retain this right " 'no matter how overwhelming the evidence.' " *State v. Harvey*, 2002 WI 93, ¶ 20, 254 Wis. 2d 442, 647 N.W.2d 189 (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 277 (1993)). Therefore, whether Hauk waived her right to have the jury determine all the elements of the crime or only some of them, the waiver analysis is the same.

¶ 33. The State also argues that the waiver analysis is affected by whether the defendant gave up a jury trial in lieu of a determination by the circuit court or whether the defendant stipulated to the elements. Specifically, the State suggests that the requirements regarding jury waiver may not apply when a defendant enters a stipulation. We do not see the logic of this

argument. Whether the defendant agrees to a circuit court determination of one or more elements or whether there is a stipulation, the defendant has still given up his or her right to have a jury determine all of the elements of the crime. If anything, courts should be more vigilant, not less, to insure a knowing and voluntary waiver when the defendant gives up the right to have *any* fact finder determine elements of the crime than when the trier of fact shifts from jury to judge. *See State v. Bangert,* 131 Wis. 2d 246, 265–66, 389 N.W.2d 12 (1986). Regardless, we see no reason why waiver requirements should not apply equally to all jury waivers.[8]

¶ 34. In arguing that Hauk did waive her jury right, the State points to the stipulation. The problem with the stipulation, however, is that it was signed by Hauk's attorney only, and not by Hauk herself. The supreme court has held that the waiver must be made *personally* on the record by the defendant. *State v. Livingston,* 159 Wis. 2d 561, 569, 464 N.W.2d 839 (1991); *see also State v. Grant,* 230 Wis. 2d 90, 95, 601 N.W.2d 8 (Ct. App. 1999). The stipulation is therefore insufficient.

¶ 35. The State also relies on the following interaction between the court and Hauk:

---

[8] The State relies on *State v. Benoit,* 229 Wis. 2d 630, 600 N.W.2d 193 (Ct. App. 1999), for both of its arguments. The holding in *Benoit,* however, applies only when "the jury is instructed on the element[s]." *Id.* at 640. Because the jury in Hauk's trial was not instructed on any of the elements of bail jumping, *Benoit* is not controlling.

COURT: Okay. Miss Hauk you have the right to have the jury determine every element of the offense of bail jumping beyond a reasonable doubt. Your attorney has offered to stipulate to a few of the elements. (1) that you were charged with a felony; (2) that you were released on a bond; and (3) that if the jury finds that you either conspired or solicited this hit, or this attempted murder plot, then the court would not submit the other element that I mentioned and simply find you guilty. If the jury found that you did not engage in this solicitation or conspiracy, whatever it turns out to be, then you would be acquitted. Is that something that you are still interested in?

MS. HAUK: Yes, Your Honor.

¶ 36. We do not believe that Hauk's reply of "Yes, Your Honor" "clearly indicate[s her] willingness and intent to waive [her] right to a jury trial." *State v. Moore*, 97 Wis. 2d 669, 671, 294 N.W. 2d 551 (Ct. App. 1980); *see also Livingston*, 159 Wis. 2d at 569 ("The record must clearly demonstrate the defendant's personal waiver."). Although the court informed Hauk that she had a right to have a jury determine all the elements, the court never asked Hauk if she wanted a jury trial or wished to waive it. Therefore, no waiver occurred. *Moore*, 97 Wis. 2d at 672 (holding that there is no waiver when court informs defendant of right to a jury trial but does not ask if he or she wants to waive it). The question that the court asked Hauk, "Is that something you are still interested in?" is equivocal. Immediately before the court asked this question, it had discussed several different issues, including that Hauk had the right to a jury and that she would be acquitted if the jury found that she did not commit a crime. It is therefore not clear as to what Hauk was agreeing she was "interested in." Further, although the court did

refer to the stipulation, and it could therefore be inferred both that Hauk agreed to the stipulation and also that she waived her right to a jury, "the personal waiver may not be inferred or presumed." *Livingston*, 159 Wis. 2d at 569–70. We therefore conclude that Hauk did not validly waive her right to have the jury determine the elements of the crime.

¶ 37. With respect to the appropriate remedy, when a defendant has waived the right to a jury but the colloquy was deficient, the remedy is an evidentiary hearing to determine whether the waiver of the right was knowing, intelligent and voluntary. *State v. Anderson*, 2002 WI 7, ¶ 25, 249 Wis. 2d 586, 638 N.W.2d 301. However, "where a defendant has not made a jury waiver that is personal and otherwise valid in terms of statutory and case law, the proper remedy is a new trial and not a postconviction hearing to ascertain whether the waiver was constitutionally valid." *Livingston*, 159 Wis. 2d at 573. Because there was no valid jury waiver, Hauk is entitled to a new trial in which the jury determines each element of the crime.[9]

---

[9] Because this case considers whether there was a valid jury waiver rather than an erroneous jury instruction, we do not engage in a harmless error analysis. *Compare State v. Livingston*, 159 Wis. 2d 561, 464 N.W.2d 839 (1991) (reversing and ordering a new trial without performing a harmless error analysis after concluding that there was no jury waiver) *and State v. Villarreal*, 153 Wis. 2d 323, 450 N.W.2d 519 (Ct. App. 1989) (same) *with State v. Tomlinson*, 2002 WI 91, ¶ 64, 254 Wis. 2d 502, 648 N.W.2d 367 (concluding that harmless error analysis applies when the State is relieved of its burden to prove an element of the crime as the result of an erroneous jury instruction).

## C. Sentence Modification on Second Bail Jumping Conviction

¶ 38. Because we have concluded that Hauk is entitled to a new trial on the jury waiver issue, we need not address whether the circuit court had authority to approve the stipulation or whether Hauk's right to effective assistance of counsel was violated. The only remaining issue relates to the second bail jumping conviction. After Hauk was convicted of bail jumping, she failed to appear at her sentencing hearing. As a result, the State charged Hauk with another count of bail jumping, and she pleaded no contest. She ultimately was sentenced to four years in prison for the first bail jumping conviction (No. 99–CR–43) and to five years in prison for the second bail jumping conviction (No. 99–CR–167), to run concurrently with the first conviction.

¶ 39. Hauk argues that if her first bail jumping conviction is reversed, this will be a "new circumstance" providing grounds for modification of the sentence for her second bail jumping conviction. We construe Hauk's argument as one seeking sentence modification based upon a new factor.

¶ 40. To obtain sentence modification based upon a new factor, the defendant must demonstrate by clear and convincing evidence that there is a fact relevant to the imposition of the sentence and unknown to the trial

---

We also note that because we have concluded that the State produced sufficient evidence that Hauk committed a crime, a new trial rather than dismissal is the proper relief. *See State v. Perkins*, 2001 WI 46, ¶ 47, 243 Wis. 2d 141, 626 N.W.2d 762.

court at the time of sentencing either because it was not then in existence or because it was unknowingly over-looked by all of the parties. *State v. Koeppen,* 2000 WI App 121, ¶ 33, 237 Wis. 2d 418, 614 N.W.2d 530. In addition, the defendant must show that the new fact or facts work to frustrate the purpose of the original sentence. *State v. Marshall,* 2002 WI App 73, ¶ 22, 251 Wis. 2d 408, 642 N.W.2d 571, *review denied,* 2002 WI 109, 254 Wis. 2d 262, 648 N.W.2d 477 (May 21, 2002) (No. 01–1403–CR). Whether a set of facts constitutes a new factor is a question of law that we review indepen-dently of the circuit court. *Id.* at ¶ 21.

¶ 41. There is no question that the reversal of Hauk's conviction in case No. 99–CR–43 is "new" in the sense that it was not in existence at the time Hauk was sentenced for case No. 99–CR–167. Further, we con-clude that Hauk's conviction and sentence in case No. 99–CR–43 was highly relevant in the circuit court's determination of the sentence in case No. 99–CR–167.

¶ 42. The circuit court's sentencing of Hauk to a five-year *concurrent* sentence for the bail jumping con-viction in case No. 99–CR–167 strongly suggests that Hauk's conviction for case No. 99–CR–43 was relevant to the sentence. Had the circuit court wanted Hauk to serve five years in prison independent of the first conviction, the court could have imposed a consecutive sentence. Further, before imposing sentence in case No. 99–CR–167, the court considered "the fact that you are currently serving a four-year prison sentence." The court also stated that "this is part of an episode in your life that is connected, even though it is a separate crime and consecutive sentences would be allowable, because it is your first time through the prison system it will be concurrent." When part of the underlying basis for a sentence no longer exists, this may frustrate the pur-

pose of the sentence and modification may be appropriate. *See State v. Norton*, 2001 WI App 245, ¶¶ 13–16, 248 Wis. 2d 162, 635 N.W.2d 656 (holding that revocation of probation in another case was a new factor when circuit court had believed during sentencing that probation would not be revoked and considered this fact in imposing sentence); *State v. Verstoppen*, 185 Wis. 2d 728, 741, 519 N.W.2d 653 (Ct. App. 1993) (noting that acquittal of charge which formed the basis for probation revocation was a new factor for the purpose of sentence modification of sentence for underlying crime).

■■

¶ 43. The existence of a new factor does not automatically entitle Hauk to a reduced sentence for the conviction in case No. 99–CR-167. *See State v. Hegwood*, 113 Wis. 2d 544, 546, 335 N.W.2d 399 (1983). Rather, the decision to modify a sentence based on a new factor is left to the sound discretion of the circuit court. *State v. Michels*, 150 Wis. 2d 94, 97, 441 N.W.2d 278 (Ct. App. 1989). We therefore remand to the circuit court to exercise its discretion regarding whether to modify Hauk's sentence in case No. 99–CR-167.[10]

## CONCLUSION

¶ 44. We conclude that the State presented sufficient evidence to prove that Hauk violated the terms of her bond by committing the crime of solicitation. However, because Hauk did not waive her right to have a jury determine each element of bail jumping, we reverse and remand for a new trial in case No. 99–CR-43. Finally, because we conclude that the reversal of Hauk's

---

[10] We leave it to the discretion of the circuit court to determine whether to reconsider sentencing immediately or to wait until the resolution of case No. 99–CR-43.

conviction constitutes a new factor, we remand case No. 99–CR-167 to permit the circuit court to exercise its discretion in determining whether the new factor justifies sentence modification.

*By the Court.*—Judgments and orders affirmed in part; reversed in part and cause remanded with directions.