STATE, Respondent, v. MEIER, Appellant.

*No. State 106.  Submitted under sec. (Rule) 251.54 September 11, 1973.—Decided October 2, 1973.*
(Also reported in 210 N. W. 2d 685.)

454

For the appellant the cause was submitted on the briefs of *Melvin F. Greenberg* and *Greenberg, Heitzman, Richter & Soglin,* all of Madison.

For the respondent the cause was submitted on the briefs of *Robert W. Warren,* attorney general, and *Robert D. Martinson,* assistant attorney general.

CONNOR T. HANSEN, J. The facts are uncontroverted. During the week of April 23, 1972, a police officer who had been a member of the Madison Metropolitan Narcotic Squad for fifteen months arranged with an

informer, whom he knew to be reliable, to go to 816 East Johnson Street in Madison and purchase dangerous drugs. Based upon this purchase, a search warrant was issued on April 26, 1972. The validity of the search warrant is not challenged on this appeal. The return reflects that the warrant was executed at 9 p. m. on the 26th at which time certain quantities of marijuana, hashish and amphetamines were seized, along with other items.

Defendant made an appropriate motion to suppress the evidence seized during the search, prior to entering a plea. An evidentiary hearing was held on the motion to suppress at which the defendant was the only one to testify. He testified that at approximately 9:30 p. m. on April 26th, he was sitting in his living room when someone knocked at the door. He promptly responded by going to the door and opening it about two inches. The police officers immediately entered the premises by pushing the door the rest of the way open, immobilized the defendant by placing him in handcuffs, identified themselves and showed him their authority for the search and advised of the reason for their presence. Defendant did not refuse entrance to the officers nor tell them they could not come in. The officers then proceeded to search the premises and the dangerous drugs were found. The arrest of the defendant followed. The return on the warrant indicates it was executed at 9 p. m. on April 26, 1972, which was a Wednesday. The stamp placed on it by the clerk of court reflects that it was returned to that office at 12:06 p. m. on May 1, 1972, which was a Monday.

### Issues.

Defendant raises two issues on this appeal. We asked the parties to brief and argue a third issue. They are:

(1) Was the manner in which the warrant was executed unreasonable and in violation of the defendant's

constitutional rights so that the evidence seized thereunder should have been suppressed by the trial court?

(2) Was the return of the search warrant timely under sec. 968.17, Stats.?

(3) In view of sec. 971.31 (10), Stats., is the defendant required to make a motion to withdraw a plea of guilty or nolo contendere to preserve his right to review an alleged error of refusal to suppress evidence?

### Execution of search warrant.

We think it axiomatic to state that no two cases challenging the execution of a search warrant are likely to present identical facts. Implicit in the constitutional prohibition against unreasonable searches is the protection from unlawful searches and seizures. As stated in *Ker v. California* (1963), 374 U. S. 23, 33, 83 Sup. Ct. 1623, 10 L. Ed. 2d 726:

". . . '[t]here is no formula for the determination of reasonableness. Each case is to be decided on its own facts and circumstances.' . . .

". . . the reasonableness of a search is in the first instance a substantive determination to be made by the trial court from the facts and circumstances of the case and in the light of the 'fundamental criteria' laid down by the Fourth Amendment . . . ."

The findings of reasonableness by the trial court are to be respected on appeal to the extent they are consistent with constitutional guarantees.

On the issue of entry to the premises in this case, the trial court found:

"Defendant complains of the manner in which the police entered the building. The evidence shows that defendant partially opened the door and the police pushed it wide open, immobilized the defendant and then showed their authority. We are pointed to no authority that this method invalidates the search. We think that police for whom the door is only partially opened so they cannot

see in the room have the right for their own protection to promptly enter and do what was done here."

We believe the findings of the trial court are correct.

Our attention is directed to language in *Morales v. State* (1969), 44 Wis. 2d 96, 170 N. W. 2d 684, which the defendant would construe to mean that the police must always follow a set, routine procedure before entering on a premise to conduct a search. Such is not the fact, and it would be impractical to endeavor to establish such a formula. The fact is that in *Morales,* the door was actually forced open, but under the circumstances of the case the search was validated.

In the instant case the police had positive knowledge that a few days before the search dangerous drugs were being sold on the premises. A reliable informer had made a purchase under police surveillance. Following this purchase, the police secured the search warrant in question. The complainant in this case was the same officer that executed the affidavit for the search warrant. The officers knocked on the door and the defendant responded by partially opening it. At the time the officer knocked at the door he had probable cause to believe that dangerous drugs were in fact on the premises, and that they were probably available for purchase. The fact that the defendant responded by partially opening the door made it apparent that the officers should act immediately for their own protection as well as possibly the protection of others.

The manner in which search warrants may be executed in Wisconsin is set forth in sec. 968.14, Stats., which provides:

"All necessary force may be used to execute a search warrant or to effect any entry into any building or property or part thereof to execute a search warrant."

The statute does not attempt to delineate any standards for the execution of a search warrant or as to ef-

fecting the entry of a building. We do not find that *Ker v. California, supra,* has been overruled, but on the contrary it was cited with approval. *Katz v. United States* (1967), 389 U. S. 347, 88 Sup. Ct. 507, 19 L. Ed. 2d 576. In *Ker v. California, supra,* entry into the defendant's apartment was gained with a passkey secured from the apartment manager.

Under the facts, the court concluded that:

". . . Here justification for the officers' failure to give notice is uniquely present. In addition to the officers' belief that Ker was in possession of narcotics, which could be quickly and easily destroyed, Ker's furtive conduct in eluding them shortly before the arrest was ground for the belief that he might well have been expecting the police. We therefore hold that in the particular circumstances of this case the officers' method of entry, sanctioned by the law of California, was not unreasonable under the standards of the Fourth Amendment as applied to the States through the Fourteenth Amendment." *Ker v. California, supra,* pages 40, 41.

In the case before us, we have a situation where the defendant responded to the knock of the police and voluntarily partially opened the door. Upon the happening of these events, there is no evidence that the police used any unnecessary force or violence. On the contrary, once the door was opened they moved rapidly to protect both themselves and the defendant to make their identity and purpose known to the defendant.

We are of the opinion that neither the search of the premises nor the seizure of the dangerous drugs violated any constitutionally protected rights of the defendant.

*Return of warrant.*

Sec. 968.17, Stats., requires that a search warrant be returned to the clerk of court within forty-eight hours after its execution. The search warrant in the instant

case was executed at 9 p. m. on Wednesday, April 26, 1972. It was returned to the office of the clerk of court at 12:06 p. m. on Monday, May 1, 1972. The trial court appropriately took judicial notice of the fact that the office of the clerk of court of Dane county was open from 8 a. m. to 4:30 p. m. Monday through Friday and closed on Saturday and Sunday. The trial court considered the provisions of sec. 990.001 (4), relating to the computation of time. It concluded that a reasonable application of the statute to the situation here presented would not require the filing of the warrant in an office that was closed. The trial court computed the time by excluding the period from 4:30 p. m. Friday to 8 a. m. on Monday during which the office was closed, and thus determined that the warrant was returned within the statutory period of forty-eight hours.

"While it is the duty of the officers executing a search warrant to make a return thereof in the manner provided by law, as a general rule the failure of an officer to make a return of a search warrant properly issued and served will not invalidate the search warrant, or a search and seizure made thereunder, even where the statute requires the return within a certain time, the return being merely a ministerial act, which may be performed later, at least within a reasonable time. . . ." 79 C. J. S., *Searches And Seizures*, p. 906, sec. 84.

"While the requirement of the prompt return is a valuable safeguard of the property rights of individuals, the privacy of the individual, which is protected by the Fourth Amendment, has already been invaded by the time the inventory-and-return statute becomes relevant . . . ." 68 Am. Jur. 2d, *Searches And Seizures*, p. 738, sec. 83.

If error existed as to the return of this warrant, it was ministerial in nature and not error which should affect the validity of the search. *United States v. Wilson* (5th Cir. 1971), 451 Fed. 2d 209, certiorari denied, 405 U. S. 1032, 92 Sup. Ct. 1298, 31 L. Ed. 2d 490. The trial court's construction of sec. 968.17, Stats., is reasonable

in view of the fact that the time requirement contained therein is of a ministerial nature and that there is nothing in the record to indicate that the rights of the defendant were in any way prejudiced.

*Requirement to withdraw plea.*

Sec. 971.31 (10), Stats., provides:

"An order denying a motion to suppress evidence or a motion challenging the admissibility of a statement of a defendant may be reviewed upon appeal from a judgment of conviction notwithstanding the fact that such judgment was entered upon a plea of guilty."

This is a new provision and the judicial council explains:

". . . It permits a defendant to appeal from a guilty plea when, prior to entry of the guilty plea, the court had denied a motion to suppress evidence. On review, the appellate court can determine whether or not the order denying a suppression of evidence was proper. This subsection, based upon N. Y. Cr. Code s. 813–c., should reduce the number of contested trials since in many situations, the motion to suppress evidence is really determinative of the result of the trial. In such instances defendants usually are only contesting the legality of the search and not whether or not they did, in fact, possess the item seized. S. 974.06 affords a complementary right to the state and should be read in conjunction with this subsection. [Bill 603–A]." 1970 Wisconsin Annotations, pp. 2142, 2143, sub. (10).

Jeopardy would not attach if this court should reverse the conviction because it was based upon tainted evidence.

"Certainly it is clear beyond question that the Double Jeopardy Clause does not guarantee a defendant that the government will be prepared, in all circumstances, to vindicate the social interest in law enforcement through the vehicle of a single proceeding for a given offense. Thus, for example, reprosecution for the same offense

is permitted where the defendant wins a reversal on appeal of a conviction. . . ." *United States v. Jorn* (1971), 400 U. S. 470, 483, 484, 91 Sup. Ct. 547, 27 L. Ed. 2d 543.

Moreover, in *Price v. Georgia* (1970), 398 U. S. 323, 326, 327, 90 Sup. Ct. 1757, 26 L. Ed. 2d 300, the court said:

"The continuing jeopardy principle necessarily is applicable to this case. Petitioner sought and obtained the reversal of his initial conviction for voluntary manslaughter by taking an appeal. Accordingly no aspect of the bar on double jeopardy prevented his retrial for that crime. . . ."

In view of the legislative history of sec. 971.31 (10), Stats., it is apparent that one of the reasons the statute was adopted was to reduce the number of fully contested trials when the only issue is whether or not the order denying a motion for suppression of evidence was proper. Sec. 974.05 (1) (d), provides a complementary right to the state. Under the statute, the defendant's plea of guilty, if voluntarily and understandingly entered following a proper motion to suppress, stands as an admission of guilt subject to the right of appeal provided in sec. 971.31 (10). A reversal by this court for improper denial of a motion to suppress would result in the possibility of a new trial should the state so elect in order that the matter could be fully litigated by both the defendant and the state.

In considering the question of double jeopardy, this court has recognized and adopted the "continuous proceeding" theory where a conviction is reversed and a new trial had. *State v. Schmear* (1965), 28 Wis. 2d 126, 135 N. W. 2d 842; *Salters v. State* (1971), 52 Wis. 2d 708, 714, 715, 191 N. W. 2d 19; *State v. Waldman* (1973), 57 Wis. 2d 234, 236, 203 N. W. 2d 691. The "continuity of the proceeding" contemplates that there is but one legal trial and that there is continuing jeopardy until

the defendant has had a trial free from reversible error for the offense charged.

This court has also recognized the waiver doctrine which is based on the principle that a defendant cannot ask for relief from the consequences of a prior trial because of error and then claim he was placed in jeopardy at the first trial. *Hawkins v. State* (1966), 30 Wis. 2d 264, 268, 140 N. W. 2d 226; *Nelson v. State* (1972), 53 Wis. 2d 769, 773, 774, 193 N. W. 2d 704. The waiver doctrine might better be applied to appeals under sec. 971.31 (10), Stats. However, the fact remains that jeopardy continues until the defendant has had one error-free trial for the offense charged.

On an appeal under sec. 971.31 (10), Stats., a reversal of a conviction without a trial-court motion to withdraw a plea of guilty or no contest does not prevent a subsequent conviction of the offense charged on the grounds of double jeopardy.

*By the Court.*—Judgment and order affirmed.