STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Wyatt Daniel HENNING, Defendant-Appellant.

Supreme Court

*No. 02–1287–CR. Oral argument December 17, 2003.——Decided June 30, 2004.*

2004 WI 89

(Also reported in 681 N.W.2d 871.)

354

355

CROOKS, J., dissents.
ABRAHAMSON, C.J. and BRADLEY, J., join.

For the plaintiff-respondent-petitioner the cause was argued by *Stephen W. Kleinmaier* and *Eileen W. Pray,* assistant attorneys general, with whom on the briefs was *Peggy A. Lautenschlager,* attorney general.

For the defendant-appellant there was a brief and oral argument by *Steven D. Phillips,* assistant state public defender.

¶ 1. DAVID T. PROSSER, J. This case presents intricate issues of double jeopardy. The State seeks review of a published decision of the court of appeals,[1] reversing Wyatt Henning's (Henning) convictions of three counts of bail jumping. The State does not challenge the reversal of Henning's convictions. It disputes the court's determination that Henning may not be retried on bail jumping charges because a jury found him not guilty of two charges of possession of controlled substances with intent to deliver. Those charges had served as the basis for the three bail jumping counts. The State views the court's "remedy" of barring a new trial on bail jumping charges—this time alleging the crime of simple possession of a controlled substance as the basis for "bail jumping"—as a misapplication of double jeopardy principles. We agree. Accordingly, we withdraw any language to that effect, especially ¶ 29, from the court of appeals opinion and remand the matter to the circuit court.

## I. FACTS AND PROCEDURAL HISTORY

¶ 2. Wyatt Henning, then 19, was arrested by two officers of the Burlington Police Department on January 25, 2001. He was taken into custody on an outstanding Racine County arrest warrant. At the time of his arrest, Henning was already released on bond in two separate misdemeanor cases from Racine County and in a felony case from Walworth County.

---

[1] *State v. Henning,* 2003 WI App 54, 261 Wis. 2d 664, 660 N.W.2d 698.

¶ 3. Henning was arrested as his brother's car pulled away from a restaurant in Burlington. Police stopped the vehicle, arrested Henning, and searched him and the vehicle incident to his arrest. The search of the vehicle uncovered a number of potentially incriminating items including three separate plastic bags containing marijuana and ten individually-wrapped sugar cubes laced with LSD. The narcotics were located in a plastic wireless phone accessory package in the back seat behind a folded up armrest next to where Henning had been seated. Fingerprint analysis revealed Henning's thumb print and palm print on the plastic accessory package and his thumb print on the plastic bag which held the three smaller plastic bags of marijuana. The police also found a postal scale in Henning's possession.

¶ 4. One of the other occupants of the vehicle, Jeff Willis, later testified that he saw a "bag of weed" in the back seat and saw Henning place the drugs in a package and put the package behind the armrest. Willis said that he believed the drugs belonged to Henning.

¶ 5. The State prosecuted Henning for (1) possession of THC with intent to deliver;[2] and (2) possession of LSD with intent to deliver.[3] It also charged Henning with (3) misdemeanor bail jumping, based on Henning's release on a bond arising out of a criminal trespass charge in Racine County;[4] (4) misdemeanor bail jumping, based on Henning's release on a second bond

---

[2] Wis. Stat. § 961.41(1m)(h)1 (2001–02). All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

[3] Wis. Stat. § 961.41(1m)(f)3.

[4] Wis. Stat. § 946.49(1)(a). Wisconsin Stat. § 946.49 provides:

arising from a separate bail jumping charge for failing to comply with the first Racine County bond;[5] and (5) felony bail jumping based on Henning's release on a third bond from Walworth County for burglary.[6] The State did not charge Henning with simple possession of a controlled substance, and it did not rely on simple possession of a controlled substance as the basis for the bail jumping charges.

¶ 6. Under Wisconsin law, defendants charged with misdemeanors (Wis. Stat. § 969.02) or felonies (Wis. Stat. § 969.03) violate the bail jumping statute if they commit *any* crime while released on bond.[7] Wis. Stat. §§ 969.02(4), 969.03(2). Because Henning was subject to three separate bonds, the State charged Henning with three counts of bail jumping because it believed he intentionally violated the conditions of his release by committing another crime.

¶ 7. At trial Henning and the State stipulated that, if Henning were found guilty of either count of possession with intent to deliver, Henning would have

---

946.49 Bail jumping (1) Whoever, having been released from custody under ch. 969, intentionally fails to comply with the terms of his or her bond is:

(a) If the offense with which the person is charged is a misdemeanor, guilty of a Class A misdemeanor.

(b) If the offense with which the person is charged is a felony, guilty of a Class H felony.

(2) A witness for whom bail has been required under s. 969.01(3) is guilty of a Class I felony for failure to appear as provided.

[5] *Id.*

[6] Wis. Stat. § 946.49(1)(b).

[7] Both Wis. Stat. § 969.02(4) and § 969.03(2) provide: "As a condition of release in all cases, a person released under this section shall not commit any crime."

no defense to the three bail jumping charges. The stipulation benefited both parties. It relieved the State of the burden of proving the additional bail jumping elements and it helped the defendant keep the jury from hearing information about the burglary, criminal trespass, and other bail jumping charge that formed the basis for the three bonds.

¶ 8. Neither the parties nor the court foresaw how the parties' stipulation would be handled by the jury. The court gave no instruction to the jury regarding the crime of possession, which is a lesser-included offense of possession with intent to deliver, because no verdict was requested by either party for that crime. Consequently the jury received no general instruction from the court about lesser-included offenses. With the stipulation in place, Henning and the State assumed that the bail jumping verdicts would depend entirely on the jury's resolution of the possession with intent to deliver charges.

¶ 9. During its deliberations, the jury sent the court a note saying it needed "more information on [the bail jumping counts], what was violated, what were the conditions." After consulting with the prosecutor and defense counsel, the court responded: "The condition of the bond was that he not commit a new crime while out on bond such as possession with intent to deliver LSD or THC."

¶ 10. That response did not satisfy the jury. The court received a second note, this time asking, "If we find the defendant not guilty of [possession of LSD and THC with intent to deliver], but we believe he is guilty of another crime, can we still find him guilty [of bail jumping], *crime being possession as opposed to possession with intent?*" (Emphasis added.) The court heard

360

arguments from the prosecution and defense as to the appropriate response and then answered the question with a "yes."

¶ 11. The record indicates that the jury reached its verdict approximately seven minutes later. The jury acquitted Henning on the two possession with intent to deliver charges and found him guilty of all three bail jumping charges.

¶ 12. Henning appealed, and the court of appeals reversed. *Henning,* 261 Wis. 2d 664, ¶ 4. The court noted that Henning's defense to the bail jumping charges relied on his defense to the charges of possession with intent to deliver. *Id.,* ¶ 18. The evidence presented focused on the possession with intent to deliver charges, and not the lesser-included offense of possession. *Id.,* ¶ 19. Further, the jury was not properly instructed on lesser-included offenses, and therefore had no guidance as to the proper manner to deliberate regarding simple possession, nor was the jury provided a separate verdict relating to possession. *Id.,* ¶ 20. The court of appeals summarized the issue as whether the court could uphold "an undocumented lesser-included jury finding based upon incomplete lesser-included jury instructions." The court of appeals refused to do so. *Id.,* ¶ 28.

¶ 13. Since the State does not challenge the court of appeals' primary analysis, we focus in this review on the remedy awarded to Henning by the court of appeals. Because of the procedural irregularities at trial, the court first reversed Henning's convictions, then went on to state:

> That brings us to the question of the remedy. The State argues that if we reverse Henning's bail jumping convictions, we should remand for a new trial. However,

two offenses are considered the "same offense" for double jeopardy purposes unless each offense requires proof of a fact that the other does not. *Dowling v. United States,* 493 U.S. 342, 355 (1990) (citing *Block-burger v. United States,* 284 U.S. 299, 304 (1932)). The core protection of the Double Jeopardy Clause attaches to an acquittal and prohibits retrial for the "same offense" after an acquittal. *Dowling,* 493 U.S. at 355. Pursuant to the "elements only" test of *Blockburger,* possession of a controlled substance is clearly a lesser-included offense of the greater offense of possession of a controlled substance with intent to deliver. Since Henning has been acquitted of the greater offense, he cannot be retried for bail jumping based on a lesser-included offense. We reverse outright.

*Id.,* ¶ 29. Thus, rather than remanding, the court of appeals barred the State from retrying Henning. The State petitioned this court for review, asking that we reverse this last paragraph of the court of appeals decision.

## II. STANDARD OF REVIEW

¶ 14. Whether a defendant may be retried without violating his or her right to be free from double jeopardy is a question of law that this court reviews de novo. *State v. Anderson,* 219 Wis. 2d 739, 746, 580 N.W.2d 329 (1998) (citing *State v. Sauceda,* 168 Wis. 2d 486, 492, 485 N.W.2d 1 (1992)).

## III. DISCUSSION

A. Applicable Double Jeopardy Principles

¶ 15. Henning's position rests upon the supposition that, when bail jumping is predicated upon the commission of a new offense, as it was here, bail

jumping and the new offense are the "same" for double jeopardy purposes. Henning extrapolates this premise to preclude retrial on bail jumping charges if that retrial is predicated upon a lesser-included offense of a charge of which Henning has already been acquitted. In order to evaluate his theory, we set forth several double jeopardy principles.

1. The "Same Offense"

¶ 16. Under the Fifth Amendment of the United States Constitution, as well as a similar provision in the Wisconsin Constitution,[8] no person shall be "placed twice in jeopardy of punishment for the same offense." *State v. Trawitzki,* 2001 WI 77, ¶ 20, 244 Wis. 2d 523, 628 N.W.2d 801 (citing *Sauceda,* 168 Wis. 2d at 492). It is well established that the Double Jeopardy Clause applies in three situations. "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969); *see also State v. Kurzawa,* 180 Wis. 2d 502, 515, 509 N.W.2d 712 (1994).

¶ 17. In all three situations, the protection of the Double Jeopardy Clause involves the definition of "same offense." *State v. Davison,* 2003 WI 89, ¶¶ 19–20, 263 Wis. 2d 145, 666 N.W.2d 1. How courts define "the same

---

[8] Wis. Const. art. I, § 8(1). Because of the similarities between the state and federal constitutions on this point, we generally view the two provisions as having identical scope and purpose. *State v. Davison,* 2003 WI 89, ¶ 18, 263 Wis. 2d 145, 666 N.W.2d 1 (citing *Day v. State,* 76 Wis. 2d 588, 591, 251 N.W.2d 811 (1977); *State v. Lechner,* 217 Wis. 2d 392, 401 n.5, 576 N.W.2d 912 (1998)).

offense" often carries profound consequences for criminal defendants seeking the protection of the Double Jeopardy Clause. Whether one offense is the same as another is not limited to whether the two offenses arise under the identical statutory provision. Rather, the touchstone of "sameness" is the "elements-only" test, which the United States Supreme Court articulated in *Blockburger v. United States,* 284 U.S. 299, 304 (1932). Under the *Blockburger* test, one offense is not the "same offense" as another when "each provision requires proof of a fact which the other does not." *Id.* (citing *Gavieres v. United States,* 220 U.S. 338, 342 (1911)).

¶ 18. In the context of a second prosecution, this court has adopted the *Blockburger* test to demarcate the boundary between lawful successive prosecutions from constitutional violations. *State v. Kurzawa,* 180 Wis. 2d at 524. Unlike multiple *punishments,* where the *Blockburger* test can be seen as establishing a rebuttable presumption that may give way to legislative intent, *Davison,* 263 Wis. 2d 145, ¶ 25, successive *prosecutions,* with the attendant danger of government abuse, caution against looking past the *Blockburger* test's proscriptions because of legislative intent. *See id.* Indeed, the Supreme Court, first in *Grady v. Corbin,* 495 U.S. 508 (1990), and then in *United States v. Dixon,* 509 U.S. 688 (1993), the case that overruled *Grady,* has been willing to move beyond a strict "elements only" interpretation of *Blockburger* in cases involving a second prosecution. *See Davison,* 263 Wis. 2d 145, ¶ 25 ("The court appears *less* tolerant of prosecuting the same offense in a second prosecution.").

## 2. Continuing Jeopardy

¶ 19. The Double Jeopardy Clause does not necessarily act as a bar to a second trial for the same charge after conviction. For instance, there is generally no bar to a second trial when a conviction is overturned on appeal. *Ball v. United States,* 163 U.S. 662 (1896). As the Supreme Court explained in a more recent case:

> [I]f the first trial has ended in a conviction, the double jeopardy guarantee *"imposes no limitations whatever* upon the power to *retry* a defendant who has succeeded in getting his first conviction set aside" . . . . "[T]o require a criminal defendant to stand trial again after he has successfully invoked a statutory right of appeal to upset his first conviction *is not an act of governmental oppression of the sort against which the Double Jeopardy Clause was intended to protect."*

*United States v. DiFrancesco,* 449 U.S. 117, 131 (1980) (first and third emphasis added) (citations omitted).

¶ 20. The notion that a convicted defendant is not placed in jeopardy a second time when he is retried after his conviction is reversed, has been justified on grounds of waiver and on the legal fiction that the second trial is a continuation of the first. *See State v. Schmear,* 28 Wis. 2d 126, 135–36, 135 N.W.2d 842 (1965).[9]

---

[9] Under the "continuing jeopardy" principle, "there is but one legal trial and . . . there is continuing jeopardy until the defendant has had a trial free from reversible error for the offense charged." *State v. Meier,* 60 Wis. 2d 452, 461–62, 210 N.W.2d 685 (1973); *see also* 5 Wayne R. LaFave et al., *Criminal Procedure* § 25.4(a) (2d ed. 1999).

¶ 21. In 1964 Justice Harlan offered perhaps the most intellectually honest justification for the "continuing jeopardy" principle:

> While different theories have been advanced to support the permissibility of retrial, of greater importance than the conceptual abstractions employed to explain the *Ball* principle are the implications of that principle for the sound administration of justice. Corresponding to the right of an accused to be given a fair trial is the societal interest in punishing one whose guilt is clear after he has obtained such a trial. It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction. From the standpoint of a defendant, it is at least doubtful that appellate courts would be as zealous as they now are in protecting against the effects of improprieties at the trial or pretrial stage if they knew that reversal of a conviction would put the accused irrevocably beyond the reach of further prosecution. In reality, therefore, the practice of retrial serves defendants' rights as well as society's interest. The underlying purpose of permitting retrial is as much furthered by application of the rule to this case as it has been in cases previously decided.

*United States v. Tateo,* 377 U.S. 463, 466 (1964); *see also Justices of Boston Municipal Court v. Lydon,* 466 U.S. 294, 308 (1984) ("[I]mplicit in the *Ball* rule permitting retrial after reversal of a conviction is the concept of 'continuing jeopardy.' That principle 'has application where criminal proceedings against an accused have not run their full course.' "); *Price v. Georgia,* 398 U.S. 323, 329, (1970) ("The concept of continuing jeopardy implicit in the *Ball* case would allow petitioner's retrial

for voluntary manslaughter after his first conviction for that offense had been reversed.").

¶ 22. There are exceptions to the principle of continuing jeopardy. For example, double jeopardy principles prevent a defendant from being retried when a court overturns his conviction due to insufficient evidence. *Burks v. United States,* 437 U.S. 1, 11 (1978). Where the evidence is found insufficient to convict the defendant at trial, the defendant cannot again be prosecuted. "[I]t should make no difference that the *reviewing* court, rather than the trial court, determined the evidence to be insufficient." *Id.*

3. Collateral Estoppel

¶ 23. The Double Jeopardy Clause incorporates the principles of collateral estoppel, also known as issue preclusion. *Ashe v. Swenson,* 397 U.S. 436, 445–46 (1970). Accordingly, "an issue of ultimate fact that is determined by a valid and full judgment cannot again be litigated between the same parties in a subsequent lawsuit." *State v. Vassos,* 218 Wis. 2d 330, 343, 579 N.W.2d 35 (1998) (citing *Ashe,* 397 U.S. at 443).

¶ 24. Although collateral estoppel is "embodied" in the Double Jeopardy Clause, in criminal cases it actually operates beyond double jeopardy's bar against a second prosecution for the same offense after acquittal or conviction. As the Seventh Circuit put it, "collateral estoppel is applicable in criminal cases *only when double jeopardy is not." United States v. Bailin,* 977 F.2d 270, 275 (7th Cir. 1992). This paradox is understood when one recognizes that a criminal defendant will

367

never *need* the protections of collateral estoppel when the state is barred entirely from prosecuting the defendant. *Id.*

B. Retrial or Successive Prosecution?

¶ 25. The State contends that its plan to retry Henning on three counts of bail jumping is not barred by double jeopardy because double jeopardy imposes "no limitation" whatever upon the power to *retry* a defendant who has succeeded in getting his first conviction reversed. *See DiFrancesco,* 449 U.S. at 131 (quoting *Pearce,* 395 U.S. at 720). The State asserts that the court of appeals erred in preemptively foreclosing the possibility that Henning could be retried on the overturned bail jumping convictions.

¶ 26. Henning counters that double jeopardy does apply and does bar a retrial of the bail jumping charge. He insists that this case falls outside of the "continuing jeopardy" rule. Henning asserts that he cannot be successively prosecuted for bail jumping in this situation in which bail jumping is predicated on the commission of a new crime because the bail jumping offense and the new crime are the "same" offense for double jeopardy purposes. Because there was an acquittal on the new crime (possession of controlled substances with intent to deliver), any prosecution based on that crime or on a lesser-included offense is a successive prosecution that violates double jeopardy.

¶ 27. As we examine this situation, several principles are clear: Henning was acquitted of (1) possessing THC with intent to deliver; and (2) possessing LSD with intent to deliver. Consequently, he may not be charged with these same offenses in a second prosecution after acquittal. Moreover, he may not be charged

with simple possession of THC or simple possession of LSD because these charges would violate *Blockburger* in that the lesser-included offense in each instance is the "same offense" as the offense of which Henning was acquitted. The lesser-included offense does not require proof of a fact which the greater offense does not. *Blockburger,* 284 U.S. at 304.

¶ 28. If there were a retrial of bail jumping charges, Henning could not be tried for these charges on a theory that he had violated the conditions of his bond by possessing THC or LSD *with intent to deliver* because those two charges have already been decided against the State. If nothing else, the defendant could assert collateral estoppel.

¶ 29. The issue to be decided is whether the defendant could be retried for bail jumping on a different theory, that is, bail jumping predicated on the commission of the crime of simple possession of THC or LSD.

¶ 30. Henning devotes the bulk of his argument trying to establish that, for the purposes of successive prosecution, the elements of the substantive offense (possession with intent to deliver) are "incorporated" within the elements of bail jumping, and that therefore the two are the "same offense" as a matter of law. For this he relies on *Dixon.*

¶ 31. In *Dixon,* the defendant was arrested for second-degree murder and was released on bond. *Id.* at 691. His release form specified that he was not to commit "any criminal offense." *Id.* He was subsequently arrested and indicted for possession of cocaine with intent to deliver. *Id.* Under local procedure in the District of Columbia, the court issued an order requiring the defendant to show cause why he should not be held in contempt. After the show-cause hearing, the

369

court concluded that the government had established beyond a reasonable doubt that the defendant was in possession of drugs and that those drugs were possessed with intent to deliver. *Id.* The court found the defendant guilty of criminal contempt and sentenced him to 180 days in jail. *Id.* at 691–92. He later moved to dismiss the cocaine indictment on double jeopardy grounds. *Id.* at 692.

¶ 32. The Supreme Court upheld the trial court's dismissal of the indictment. Writing for himself and Justice Kennedy, Justice Scalia wrote: "Because Dixon's drug offense did not include any element not contained in his previous contempt offense, *his subsequent prosecution* violates the Double Jeopardy Clause." *Id.* at 700 (emphasis added). The Court provided the following explanation:

> In this situation, in which the contempt sanction is imposed for violating the order through commission of the *incorporated* drug offense, the later attempt to prosecute Dixon for the drug offense resembles the situation that produced our judgment of double jeopardy in *Harris v. Oklahoma,* 433 U.S. 682 (1977) (per curiam). There we held that a subsequent prosecution for robbery with a firearm was barred by the Double Jeopardy Clause, because the defendant had already been tried for felony murder based on the same underlying felony. We have described our terse *per curiam* in *Harris* as standing for the proposition that, for double jeopardy purposes, "the crime generally described as felony murder" is not "a separate offense distinct from its various elements." *Illinois v. Vitale,* 447 U.S. 410, 420–21 (1980). So too here, the "crime" of violating a condition of release cannot be abstracted from the "element" of the violated condition. The *Dixon* court order *incorporated* the entire governing criminal code in the same manner as the *Harris* felony-murder statute *incorporated* the several enumerated felonies. Here,

370

as in *Harris,* the underlying substantive criminal of-
fense is "a species of lesser-included offense." *Vitale,*
*supra,* at 420.

*Id.* at 698 (emphasis added) (citation omitted).

¶ 33. Three other justices—White, Stevens, and
Souter—concurred in the judgment of dismissal on
different grounds. Justice Scalia's "incorporation"
theory was able to command only two votes. Conse-
quently, the holding in *Grady*—that "the Double Jeop-
ardy Clause bars a subsequent prosecution if, to estab-
lish an essential element of an offense charged in that
prosecution, the government will prove conduct that
constitutes an offense for which the defendant has
already been prosecuted"—was overruled. *Grady,* 495
U.S. at 510.

¶ 34. In the aftermath of *Dixon,* one can imagine
a situation in which a defendant is prosecuted for
possession of a controlled substance with intent to
deliver, for an offense committed while the defendant is
on pretrial release. If the defendant is tried on this
single drug charge and acquitted and then the state
turns around and brings a subsequent charge for *bail
jumping* based on the crime of simple possession of the
same controlled substance, this court would be faced
with a situation comparable to *Dixon, Harris,* or
*Kurzawa*—that is, a "second" or "subsequent" or "suc-
cessive" prosecution of the defendant *initiated* at a
different time.

¶ 35. In that situation, according to *Kurzawa,* this
court would engage in a *Blockburger* analysis. "We
believe that *Blockburger,* and the case law developed
around it, adequately protect the interests embodied in
the Double Jeopardy Clause. Under *Blockburger,* [1] the
state cannot successively prosecute a defendant for two

371

offenses unless each offense necessarily requires proof of an element the other does not." *Kurzawa,* 180 Wis. 2d at 524. "[2] Neither can the state prosecute an offense whose elements are 'incorporated' into the elements of an offense already prosecuted. Finally, [3] the state cannot relitigate factual issues that have already been *adjudicated to the defendant's benefit* in an earlier prosecution." *Id.* (emphasis added) (citation omitted).

¶ 36. This language, which shows some willingness to embrace the "incorporation" theory, must be put in the context of two separately initiated prosecutions, one of which would come to trial *subsequent* to the first prosecution after there had been an acquittal or a conviction on the other prosecution.

¶ 37. The *Henning* case is different. This case involved five *simultaneous* charges in a single prosecution—five charges that went to trial at the same time. This case does not involve a "second" or "subsequent" or "successive" prosecution. Five charges filed at the same time do not implicate double jeopardy unless, after conviction, they violate double jeopardy's prohibition against "multiple punishments for the same offense." *Pearce,* 395 U.S. at 717. Here, if Henning had been convicted of all five offenses, he would *not* have had a double jeopardy claim, even if we assume that the three bail jumping charges "incorporated" all the elements of, say, possession with intent to deliver THC. Henning would not have had a double jeopardy claim for multiple punishments because *in this line of analysis* the *Blockburger* test is "now seen as simply a rule of construction creating a rebuttable prescription of sameness." *Davison,* 263 Wis. 2d 145, ¶ 24 (quoting Akhil Reed Amar, *Double Jeopardy Law Made Simple,* 106 Yale L. Rev. 1807, 1819 (1997) (citing cases)).

¶ 38. As we said in *Davison,*

Looking then solely to cumulative punishments imposed in a single prosecution for the same offense, "the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter,* 459 U.S. 359, 366 (1983). "Even if the crimes are the same under *Blockburger,* if it is evident that a state legislature intended to authorize cumulative punishments, a court's inquiry is at an end." *Johnson,* 467 U.S. [493], at 499 n.8 [(1984)]; *see also Garrett v. United States,* 471 U.S. 773, 779 (1985).

. . . .

We read the Supreme Court as saying that when a defendant is convicted under more than one statute for a single act or transaction and the charges constitute "the same offense" because they are identical in law and fact, the Double Jeopardy Clause prohibits cumulative punishments from these convictions *unless the relevant legislative body intended to authorize cumulative punishments.*

*Davison,* 263 Wis. 2d 145, ¶¶ 28, 30.

¶ 39. In Wisconsin, bail jumping and the crime underlying a bail jumping charge are distinct and separate offenses for purposes of the Double Jeopardy Clause. *State ex rel. Jacobus v. State,* 208 Wis. 2d 39, 53, 559 N.W.2d 900 (1997) (citing *State v. Harris,* 190 Wis. 2d 718, 724, 528 N.W.2d 7 (Ct. App. 1994); *State v. Nelson,* 146 Wis. 2d 442, 449, 432 N.W.2d 115 (Ct. App. 1988)), *review denied* 147 Wis. 2d 890, 436 N.W.2d 30 (1988)). These cases conclusively demonstrate that the legislature's purpose in enacting bail jumping laws was to authorize multiple punishments to promote multiple interests. "[B]ail jumping laws are intended not only to deter bail jumping, but also to enhance the effective

administration of justice in the courts. . . . [C]ourts impose bond conditions with the intent to protect members of the community . . . and prevent a defendant from violating the law." *Jacobus,* 208 Wis. 2d at 52.

¶ 40. These principles can coexist in harmony with the theory that a retrial of bail jumping charges would constitute "continuing jeopardy." They are shattered if we determine that a retrial of bail jumping charges would constitute separate, successive prosecutions with respect to the drug charges of which Henning was acquitted.

■■■■

¶ 41. Thus, the critical question is this: When a jury, in a multicount trial, both convicts and acquits, and an appellate court then overturns the conviction or convictions, do the acquitted charges pose any direct bar to retrial of the reversed convictions? After reviewing the analyses of relevant authorities, we conclude that an acquittal in these circumstances is not equivalent to a first prosecution in a successive prosecution scenario: an acquittal poses no direct bar to retrial on the reversed charges. Thus, even if we were to accept Henning's supposition that bail jumping and the underlying offense for the bail jumping are the "same" for double jeopardy purposes, there is still no direct double jeopardy bar to retrying him on convictions overturned on appeal because the retrial involves continuing jeopardy.

¶ 42. In the ensuing analysis, we rely on principles that have been drawn from two interrelated lines of cases addressing double jeopardy: (1) retrial following a conviction overturned on appeal; and (2) retrial following a mistrial.

¶ 43. Like a retrial after reversal of a conviction, "[m]ultiple trials on a single charge are not prohibited if the first trial resulted in a mistrial that was justified under the manifest necessity doctrine or was requested or consented to by the defense (absent judicial or prosecutorial overreaching that is aimed at forcing the mistrial)." 5 Wayne R. LaFave et al., *Criminal Procedure* § 25.1(g)(4) (2d ed. 1999). Both situations are exceptions to the general rule that a second trial is a "successive prosecution":

> [I]n a case of a retrial after a successful appeal from a conviction, the concept of continuing jeopardy on the offense for which the defendant was convicted applies, thereby making retrial on that offense permissible. In a slightly different context, the defendant's right to have the need for a retrial measured by the strict "manifest necessity" standard of *United States v. Perez,* 9 Wheat. 579, 6 L.Ed. 165 (1824), does not exist if the mistrial was granted at the defendant's request. *Both the trial after the appeal and the trial after the mistrial are, in a sense, a second prosecution for the same offense, but, in both situations, the policy behind the Double Jeopardy Clause does not require prohibition of the second trial.*

*Jeffers v. United States,* 432 U.S. 137, 152 (1977) (emphasis added) (citations omitted).

¶ 44. Double jeopardy principles are often difficult to apply,[10] and this difficulty is magnified when, on appeal, the issues involve multi-count indictments that

---

[10] See *Albernaz v. United States,* 450 U.S. 333, 343 (1981), in which Chief Justice Rehnquist coined an oft-quoted comment regarding the difficulties of double jeopardy litigation: "decisional law in the area is a veritable Sargasso Sea which could not fail to challenge the most intrepid judicial navigator."

produce different results on different charges. Courts that have addressed such situations handle these complex situations as if each different charge proceeds along a parallel track. The termination of jeopardy on one track does not directly impact charges on the different parallel tracks. In other words, when jeopardy on one count of a multi-count complaint terminates, this does not mean that other counts brought simultaneously become subject to successive prosecution analysis.

¶ 45. This analysis was well stated in *Mauk v. State*, 605 A.2d 157 (Md. Ct. Spec. App. 1992),[11] where the Maryland Court of Special Appeals issued a scholarly opinion about the retrial of particular charges in a multi-count indictment when jeopardy has terminated on some but not all charges. The defendant stood trial on a multi-count indictment that included possession of marijuana with intent to deliver and simple possession of marijuana. *Id.* at 158. The jury could not reach a

[11] In *Hunt v. State*, 622 A.2d 155, 157 n.1 (Md. Ct. Spec. App. 1993), the same Maryland court recognized that, to some degree, *Mauk v. State*, 605 A.2d 157 (Md. Ct. Spec. App. 1992), had been functionally overruled by *Griffiths v. State*, 611 A.2d 1025 (Md. Ct. Spec. App. 1992). *Griffiths* recognized that *Mauk*, in crafting its analysis, overlooked aspects of Maryland common law. "As [the Maryland common law] rule is more favorable to defendants and is therefore not precluded by the Constitutional principles formulated by the [United States] Supreme Court, it is the one that effectively binds us and the trial courts of this State." 611 A.2d at 1029. In any event, *Griffiths* involved multiple punishments, which are not directly at issue in this case. *Mauk*'s in-depth analysis regarding the double jeopardy principles of our federal constitution, which is generally interpreted in the same manner as the double jeopardy provision of the Wisconsin Constitution, *see supra* note 8, continues to offer compelling and relevant analysis.

verdict on the possession with intent to deliver charge, and the court declared a mistrial on that count. At the same time, the jury convicted the defendant of the simple possession charge. *Id.*

¶ 46. The defendant moved to preclude retrial of the possession with intent to deliver charge on double jeopardy grounds. The motion was denied, and the defendant appealed. On appeal, the court considered the defendant's syllogism: (1) the defendant had been placed in jeopardy once because he had been tried, convicted, and sentenced (and had even served his sentence) on the simple possession charge; (2) simple possession and possession with intent to deliver are the "same" for double jeopardy purposes; (3) therefore, retrying the defendant on a charge of possession with intent to deliver would place him twice in jeopardy for the same offense. *Id.* at 159.

¶ 47. The court concluded that there was no double jeopardy bar to the retrial. "The appellant's problem is that he points to an impact that would be legally and logically compelling in a context involving sequential jeopardy but he misapplies it to a very different context involving continuing jeopardy. His syllogism is a valid one and would be persuasive in an appropriate setting." *Id.* at 160. Thus, even though the new trial on the mistried possession with intent to deliver charge would be for the "same offense," the *Blockburger* test is "inapplicable to continuing jeopardy problems, not through any fault of its own but for the larger reason that the double jeopardy protection itself is inapplicable." *Id.*

¶ 48. Even though jeopardy on the simple possession count terminated when the jury returned a guilty verdict, the court noted that jeopardy on the possession

with intent to deliver charge continued on through the mistrial and through the appellate process. The court explained:

> In the context of a multi-count indictment or a multi-indictment trial involving related offenses, multiple jeopardies for different manifestations of the "same offense" routinely begin simultaneously and run along parallel tracks. Clearly, no double jeopardy problem is involved. In a multi-count indictment for armed robbery, for instance, simultaneous jeopardies will be suffered for 1) armed robbery, 2) simple robbery, 3) theft, and 4) assault and battery. In a literal sense, this involves not simply double jeopardy or even triple jeopardy but quadruple jeopardy for the "same offense," except that that is not the way we count. The reason there is no impediment to these apparently multiple parallel jeopardies is that "double jeopardy" essentially means "former jeopardy" and is primarily concerned, therefore, with regulating subsequent and sequential jeopardies. In the fundamentally different environment of simultaneous jeopardy, its only concern is with the avoidance of multiple punishment and that is a concern that is not addressed until the time for sentencing.
>
> While these routinely simultaneous jeopardies are legitimately proceeding along their parallel tracks, the termination of jeopardy on one or more of the tracks—through the declaration of a mistrial, the entry of a *nol pros,* the granting of a directed verdict of acquittal, *the rendering of a verdict of acquittal,* the rendering of a verdict of conviction, etc.—has no carry-over effect on the other jeopardies still proceeding along their own tracks.
>
> . . . .
>
> However long its life may be, the continuing original jeopardy for possession with intent to distribute will not be at all affected, under double jeopardy

378

> principles at least, by the fates of its doctrinal litter-
> mates, whose jeopardies began simultaneously with its
> own.

*Id.* at 167 (emphasis added). Thus, where multiple offenses are consolidated in one trial, termination of jeopardy on one count does not directly impact the proceedings on other counts, even if the offenses are the "same" for double jeopardy purposes.

¶ 49. *Mauk* arrived at this conclusion by exhaustively analyzing United States Supreme Court precedent. The Supreme Court seems partial to the concept that termination of jeopardy on one count of a multi-count indictment does not terminate jeopardy for all counts, although the precise issue in this case has never been directly presented to the Court. For example, in *Ohio v. Johnson,* 467 U.S. 493 (1984), the defendant was charged with murder, robbery, and the respective lesser-included offenses of manslaughter and theft. *Id.* at 494. The defendant pleaded guilty to the lesser offenses of manslaughter and theft, and the trial court granted the defendant's motion to dismiss the greater-included offenses on double jeopardy grounds. *Id.* Ohio appellate courts affirmed the trial court's decision. *Id.* at 496. The Supreme Court reversed, holding that the defendant could be tried on the greater-included offenses despite the guilty pleas to the lesser-included offenses.

¶ 50. In the *Johnson* opinion, the Court responded to the defendant's position that, if the state prosecuted the defendant for murder and robbery following conviction and sentencing for manslaughter and theft pursuant to the plea, the prosecution would violate double jeopardy's bar against retrial following conviction. The Court roundly rejected this argument:

The answer to this contention seems obvious to us. Respondent was indicted on four related charges growing out of a murder and robbery. The grand jury returned a single indictment, and all four charges were embraced within a single prosecution. Respondent's argument is apparently based on the assumption that trial proceedings, like amoebae, are capable of a being infinitely subdivided, so *that a determination of guilt and punishment on one count of a multicount indictment immediately raises a double jeopardy bar to continued prosecution on any remaining counts that are greater or lesser included offenses of the charge just concluded. We have never held that, and decline to hold it now.*

*Id.* at 500–01 (emphasis added).

¶ 51. The *Johnson* case admittedly addresses the termination of jeopardy following a conviction rather than following an acquittal, but it sets out an important principle. It has been read to stand for the proposition that "the termination of jeopardy on the [lesser-included offense] counts had no crossover effect on other, already-charged counts." Mitchell Keiter, *The Mauled Verdict: The Knoller Case Shows Why Res Judicata Should Protect Partial Convictions As Well As Acquittals,* 33 McGeorge L. Rev. 493, 497 (2002).

¶ 52. Later the same month, the Court issued another double jeopardy decision suggesting the same thing. In *Richardson v. United States,* the government brought three charges against the defendant: two counts of distributing a controlled substance, and one count of conspiracy to distribute a controlled substance. 468 U.S. 317, 318 (1984). The jury acquitted the defendant on one of the two distributing a controlled substance charges, but failed to reach consensus on the other two charges. *Id.* at 318–19. The trial court declared a mistrial on those two counts. *Id.*

¶ 53. The Court analyzed the defendant's claim that a retrial was prohibited by double jeopardy. The Court noted that it has "constantly adhered to the rule that a retrial following a 'hung jury' does not violate the Double Jeopardy Clause." *Id.* at 324 (citing *Logan v. United States,* 144 U.S. 263, 297–98 (1892)):

> [T]he protection of the Double Jeopardy Clause by its terms applies only if there has been some event, such as an acquittal, which terminates the original jeopardy. Since jeopardy attached here when the jury was sworn, petitioner's argument necessarily assumes that the judicial declaration of a mistrial was an event which terminated jeopardy in his case and which allowed him to assert a valid claim of double jeopardy.
>
> . . . .
>
> [W]e hold . . . that the failure of the jury to reach a verdict is not an event which terminates jeopardy.

*Richardson,* 468 U.S. at 325.

¶ 54. In its discussion, the Court notably omitted any discussion of whether the other charge of which the defendant had been acquitted created a preclusive effect on retrial of the mistried counts. Indeed, the Seventh Circuit Court of Appeals relied on *Richardson* to reject the argument that an acquittal on some counts of a multi-count prosecution should control whether a retrial of other mistried counts for the same conduct is barred by double jeopardy. *Bailin,* 977 F.2d at 274. In *Bailin,* the government brought 195 charges related to alleged improprieties the 12 defendants committed while traders at the Chicago Mercantile Exchange. *Id.* at 272. The jury acquitted the defendants on the majority of the counts, but could not reach a verdict on the remaining charges, and the federal district court

declared a mistrial. *Id.* at 273. "[A] 'trial court's declaration of a mistrial following a hung jury is not an event that terminates the original jeopardy,' *even if there has been an acquittal on another count." Id.* at 274 (emphasis added) (quoting *Richardson,* 468 U.S. at 324). Double jeopardy "applies only if there has been some event, *such as an acquittal,* which terminates the original jeopardy." *Id.* (quoting *Richardson,* 468 U.S at 324). The court concluded that, "even when the defendant secured a partial acquittal in the first trial," the government could still retry the defendant following the mistrial. *Id.*

■■■■■■

¶ 55. The court in *Bailin* held that double jeopardy did not apply and directed the focus of its analysis to estoppel. *Id.* at 275. Estoppel in a retrial context is more appropriately considered direct than collateral because the retrial is a continuation of the first trial, not a collateral event. *Id.* at 276. *Bailin* held that direct estoppel prevented the government from relitigating issues in the retrial that had been previously decided in the defendant's favor. *Id.* According to *Bailin,*

> Direct estoppel prevents a party from relitigating a fact which was already determined against it in "a decision that finally disposes of a part of a claim on the merits but does not preclude all further action on the remainder of the claim; issues common to both parts of the claim are precluded, even though new issues remain to be decided."

*Id.* (quoting *Jeffers,* 432 U.S. 137, 152).

¶ 56. Under the principles recognized in *Mauk, Johnson, Richardson,* and *Bailin,* even if we accepted defendant's contention that bail jumping and the underlying offense are the same for double jeopardy

purposes, there is still no bar to retrying a reversed conviction for bail jumping because this is simply a case of continuing jeopardy, not successive prosecution. Accordingly, we conclude that the court of appeals erred when it held that the State could not retry Henning for bail jumping.

¶ 57.　However, it is important to note the protections defendants enjoy through issue preclusion. As the Seventh Circuit made clear, collateral estoppel applies where double jeopardy does not foreclose a second trial entirely, *see Bailin,* 977 F.2d at 275, and therefore "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe,* 397 U.S. at 443. According to *Bailin,* direct estoppel, like collateral estoppel, "bar[s] the government from relitigating issues that were necessarily and finally decided in the defendant's favor by reason of the jury's partial acquittal on other counts." *Bailin,* 977 F.2d at 276.

¶ 58.　While this court is sensitive to the dangers the Double Jeopardy Clause is designed to prevent—"repeated attempts to convict an individual, thereby exposing him to continued embarrassment, anxiety, and expense, while increasing the risk of an erroneous conviction or an impermissibly enhanced sentence," *Johnson,* 467 U.S. at 498–99 (citing *United States v. Wilson,* 420 U.S. 332, 343, (1975); *Green v. United States,* 355 U.S. 184, 187–88 (1957))—these concerns must be balanced against the underpinnings of "continuing jeopardy." Where there are multiple charges proceeding simultaneously, *Ashe's* estoppel principles provide a substantial bulwark that mitigates any harsh effects that the continuing jeopardy principle might work against a defendant.

¶ 59. Because the State already tried Henning unsuccessfully for possession with intent to deliver, the State cannot retry him on that issue. Therefore, the State cannot base a retrial for bail jumping on possession with intent to deliver. However, whether Henning is guilty of committing the crime of simple possession is not an issue that has been litigated in his favor. The State would not violate double jeopardy if it retried Henning for the bail jumping predicated upon simple possession.

## IV. CONCLUSION

¶ 60. In a multi-count trial, if the defendant is convicted of one or more counts and acquitted of one or more counts, and the defendant successfully appeals the conviction or convictions, the acquittals pose no direct bar to retrying the defendant. Rather, acquittal may indirectly impact the state's ability to retry the defendant under *Ashe's* collateral estoppel principles. In this case, the court of appeals erroneously conducted its double jeopardy analysis as one of successive prosecution. We reverse the court of appeals decision with respect to double jeopardy and remand the matter to the circuit court.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

¶ 61. N. PATRICK CROOKS, J. (*dissenting*). I strongly disagree with the majority that double jeopardy does not prevent a retrial of Henning on the bail jumping charges. The majority's analysis rests on its

conclusion that Henning's case is controlled by principles of continuing jeopardy. In fact, the majority went so far as to say that the principle of continuing jeopardy is so dispositive to the outcome, that "even if we accepted defendant's contention that bail jumping and the underlying offense are the same for double jeopardy purposes, there is still no bar to retrying a reversed conviction . . . because this is simply a case of continuing jeopardy . . . ." Majority op., ¶ 56.

¶ 62. During the initial trial, the bail jumping charges rested solely on whether Henning possessed the controlled substances at issue with intent to deliver. The stipulation makes this clear, as the prosecution and defense agreed that a guilty verdict on either count of possession with intent to deliver would result in Henning having no defense to the three bail jumping charges. Throughout the trial, both attorneys acted in accord with the stipulation, as the evidence presented to the jury focused exclusively on the charges concerning possession with intent to deliver, not on simple possession charges. During the jury instructions conference, neither attorney requested any lesser-included offense instructions on simple possession of the controlled substances at issue.

¶ 63. The nature of the case was changed, however, when the jury asked the judge, during deliberations, if it could find Henning guilty of bail jumping based on simple possession, rather than possession with intent to deliver. I agree with the court of appeals' conclusion that that question "functionally transformed the case into a lesser-included offense case." *State v. Henning*, 2003 WI App 54, ¶ 20, 261 Wis. 2d 664, 660 N.W.2d 698. As a result of the circuit court's affirmative answer, Henning's fate, which had once rested solely on the possession with intent to deliver charges, was

385

decided instead on charges of simple possession. *See id.,* ¶ 3. The jury deliberated and found Henning not guilty of the two charges of possession with intent to deliver, but guilty of bail jumping, apparently based on simple possession, without the proper instructions on lesser-included offenses and simple possession charges, and without applicable verdict forms.

¶ 64. The majority recognizes an exception to the continuing jeopardy doctrine, but then brushes past it without analyzing its relevance to this case. The exception makes clear that "double jeopardy principles prevent a defendant from being retried when a court overturns his conviction due to insufficient evidence." Majority op., ¶ 22 (citing *Burks v. United States,* 437 U.S. 1, 11 (1978)). Such exception means that the prohibition against double jeopardy "forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." *Burks,* 437 U.S. at 11 (footnote omitted). If the State is allowed another trial here, the prosecution is essentially being allowed another chance to present testimony and request instructions and verdict forms on bail jumping charges premised on simple possession, rather than possession with intent to deliver THC and LSD. As the court of appeals pointed out, it is not necessary to "quarrel with the State's right to make [a] strategic choice. But having made it, the State has to live with it." *Henning,* 261 Wis. 2d 664, ¶ 21.

¶ 65. Since this is a case that was not tried on simple possession, it is a case nearly identical to one overturned for insufficient evidence. Here, the State failed to try this case on charges of possession of THC and LSD, but rather tried and failed in its attempt to convince the jury of Henning's guilt of possession with

intent to deliver those substances. Under such circumstances, the State failed in its proof that Henning was guilty of bail jumping as well.[1] If the jury had found Henning guilty of possession with intent to deliver, he would have had no defense to the bail jumping charges due to the stipulation he entered into with the state. However, the jury found Henning not guilty with respect to the charges of possession with intent to deliver THC and LSD. The government failed to meet its burden on those charges and, in turn, failed to meet its burden for charges of bail jumping. The gamble the State made by entering into a stipulation, which rested the bail jumping charges on obtaining a guilty verdict for a possession with intent to deliver charge, proved unsuccessful.

¶ 66. In *State v. Hansford*, 219 Wis. 2d 226, 580 N.W.2d 171 (1998), we used similar reasoning when reversing a conviction for bail jumping:

> Because the bail jumping conviction was premised solely upon the Defendant's obstructing conviction, which we now reverse, the bail jumping conviction must also be reversed. Absent a finding that the Defendant committed a crime, the State has not proved beyond a reasonable doubt an element of the bail jumping charge—that the Defendant intentionally failed to comply with the term of his bond prohibiting criminal activity. ... Because we are reversing the

---

[1] It is highly debatable that a jury, even if the bail jumping charges had originally been premised on simple possession, could have found Henning guilty of those charges and of the charges of simple possession, beyond a reasonable doubt. The drugs were found during a search of a car belonging to Henning's brother. The "bag of weed" was found in the armrest between where Henning and the other backseat passenger were sitting. It was this other passenger who told the police he believed the drugs belonged to Henning.

Defendant's conviction for obstructing, we conclude as a matter of law that the evidence, viewed most favorably to the State, does not support the Defendant's conviction for bail jumping.

*Id.* at 245 (citations omitted).

¶ 67. A similar finding is required here, because the jury found that the State had not proved an element of the bail jumping charge—commission of the crime of possession with intent to deliver—beyond a reasonable doubt. Moreover, the jury was not instructed on lesser-included offenses or simple possession, forcing it to deliberate without the proper benefit of instructions and verdict forms before finding Henning guilty of bail jumping. I agree with the court of appeals that "[b]ecause such verdicts were not provided, we have no documentation of the jury's supposed determination that Henning possessed controlled substances." *Henning,* 261 Wis. 2d 664, ¶ 23. Without such verdict forms, there is no evidence that the jury even reached the conclusion that Henning was guilty of simple possession.

¶ 68. Despite the position of the court of appeals to the contrary, this is plainly a case of insufficient evidence. *See id.,* ¶ 26. The stipulation clearly provided that Henning's bail jumping charges directly hinged on the jury's determination of his charges relating to possession with the intent to deliver THC and LSD. Because the jury subsequently found him not guilty of those charges, the State's case in regard to the charges of bail jumping evaporated. The analysis by the majority based on continuing jeopardy is clearly wrong.

¶ 69. Without the argument based on the continuing jeopardy doctrine, any new proceeding against Henning on charges of bail jumping would violate the Double Jeopardy clauses of the United States and

Wisconsin Constitutions. As stated in the United States Constitution, "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . . ." U.S. Const. amend. V. Similarly, the Wisconsin Constitution states, "no person for the same offense may be put twice in jeopardy of punishment . . . ." Wis. Const. art. I, § 8, cl. 1. However, the majority, in violation of these protections, would place Henning in jeopardy a second time, for what amounts to the same offenses of which he has already been acquitted.

¶ 70. Relying on *Gavieres v. United States,* 220 U.S. 338, 343 (1911), the United States Supreme Court in *Blockburger v. United States,* 284 U.S. 299, 304 (1932), clarified the test for determining whether an offense is considered the same as another for purposes of double jeopardy. *Blockburger* stated that "the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id. See also* majority op., ¶ 17.

¶ 71. The majority makes several important points about the relationship of double jeopardy—in light of the *Blockburger* test—to this case:

> As we examine this situation, several principles are clear: Henning was acquitted of (1) possessing THC with intent to deliver; and (2) possessing LSD with intent to deliver. Consequently, he may not be charged with these same offenses in a second prosecution after acquittal. Moreover, he may not be charged with simple possession of THC or simple possession of LSD because these charges would violate *Blockburger* in that the lesser-included offense in each instance is the "same offense" as the offense of which Henning was acquitted. The lesser-included offense does not require proof of a fact which the greater offense does not.

389

Majority op., ¶ 27 (citing *Blockburger,* 284 U.S. at 304).

¶ 72. Thus, both the majority and case law are quite clear that Henning cannot be directly charged with simple possession of either controlled substance at issue. Yet, despite its belief that it would be violative of double jeopardy to charge Henning with simple possession of THC or LSD, the majority would allow Henning to be retried on charges of bail jumping when Henning has already been acquitted of the crimes upon which the bail jumping charges are based. As the United States Supreme Court noted on the subject of double jeopardy:

> The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Green v. United States,* 355 U.S. 184, 187–88 (1957).

¶ 73. Here, the majority allows Henning to be subject to just such a repeated attempt at conviction, even though Henning is to be retried for bail jumping charges when he was acquitted of the crimes upon which the bail jumping charges were premised.

¶ 74. In *State v. Kurzawa,* 180 Wis. 2d 502, 524, 509 N.W.2d 712 (1994), this court discussed three features of the *Blockburger* analysis of double jeopardy claims:

> Under *Blockburger,* the state cannot successively prosecute a defendant for two offenses unless each offense necessarily requires proof of an element the other does

not. Neither can the state prosecute an offense whose elements are "incorporated" into the elements of an offense already prosecuted. Finally, the state cannot relitigate factual issues that have already been adjudicated to the defendant's benefit in an earlier prosecution. These protections ensure that defendants will not be forced to unfairly "run the gauntlet" a second time for the same offense.

*Id.* (citations omitted). *See also,* majority op., ¶ 35.

¶ 75. The first of these three features is a basic element of double jeopardy as found in *Blockburger:* a person acquitted of one offense cannot subsequently be prosecuted for a lesser-included offense of the original offense. As previously noted, this means that Henning, who has already been acquitted of the offenses of possession of THC and LSD with intent to deliver, cannot now be charged with simple possession of THC or LSD, because the simple possession charges are lesser-included offenses of possession with intent to deliver.

¶ 76. The second of these features is the incorporation test initially enunciated in *United States v. Dixon,* 509 U.S. 688 (1993) (Scalia, J.) (plurality opinion). While only two United States Supreme Court Justices adopted this approach, this court chose to make the incorporation test a feature of Wisconsin's double jeopardy analysis in *Kurzawa. Kurzawa,* 180 Wis. 2d at 524. Under the incorporation test, the State is precluded from prosecuting a defendant for an offense that incorporates the elements of an offense for which the defendant has already been prosecuted. *Id.* Here, the bail jumping charges against Henning incorporate the two charges of simple possession which the State wishes to use as the basis for the bail jumping charges. Using the incorporation test, Henning should

not be charged with bail jumping, which incorporates a charge—simple possession—which is a lesser-included offense of charges of which he has already been acquitted. The incorporation test, which applies in this case, prevents a defendant like Henning from being indirectly charged with an offense for which the prosecution has already failed to secure a conviction.

¶ 77. However, even without using the incorporation test, I still reach the conclusion that Henning cannot be retried on charges of bail jumping based upon simple possession. *Kurzawa* also clearly states that issues already decided in favor of the defendant cannot be relitigated by the State. *Id.* In *State v. Hauk,* 2002 WI App 226, ¶ 19, 257 Wis. 2d 579, 652 N.W.2d 393, the court of appeals stated that a bail jumping conviction does not require proof of conviction for the underlying offense that led to a charge of bail jumping. Rather, bail jumping requires "evidence sufficient to allow a reasonable jury to conclude beyond a reasonable doubt that [the] defendant intentionally violated his or her bond by committing a crime . . . ." *Id. See also Henning,* 261 Wis. 2d 664, ¶ 25. While *Hauk* allows a defendant to be convicted of bail jumping without being convicted of the underlying crime, this case is distinguishable in that Henning has already been *acquitted* of the offenses that underlie the bail jumping charges. The factual issues underlying the bail jumping charges have already been litigated in favor of Henning. To predicate Henning's punishment for bail jumping on a crime for which he has already received an acquittal, as the majority does, is fundamentally unfair. Moreover, it directly contradicts Wisconsin case law, the Wisconsin Constitution, and the United States Constitution.

¶ 78. The majority attempts to distinguish Henning's claims from those made in *Kurzawa,* by

stating that "[t]his case does not involve a 'second' or 'subsequent' or 'successive' prosecution." Majority op., ¶ 37. However, as an exception to the continuing jeopardy rule, this case involves just such a successive prosecution; therefore, the factors established by this court in *Kurzawa* apply and prevent Henning from being subjected to a second "running of the gauntlet."

¶ 79. For the foregoing reasons, I respectfully dissent.

¶ 80. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON and Justice ANN WALSH BRADLEY join this dissent.